Arthur Donald FARAM, Appellant,

v.

Louisa Ann GERVITZ–FARAM, Appellee.

No. 2–94–099–CV.

Court of Appeals of Texas, Fort Worth.

March 15, 1995.

Rehearing Overruled May 4, 1995.

Jimmy L. Verner, Jr., Verner & Brumley, Dallas, for appellant.

Kenneth L. McAlister, Fort Worth, for appellee.

Before LATTIMORE and DAY, JJ., and B.J. STEPHENS, J., sitting by assignment.

## OPINION

LATTIMORE, Justice.

Arthur Faram appeals from a divorce decree. In six points of error, Faram challenges the trial court's characterization of certain separate property and the division of what he contends to be community property.

We affirm.

Arthur Faram and Louisa Gervitz[1] married in April of 1987 following a four to five month courtship. This was Gervitz' second marriage, Faram's fifth. After five years, the couple separated. In 1992, Faram filed for divorce, and, on January 13, 1994, the trial court entered a divorce decree. In conjunction with the decree, the trial court found that:

Before the marriage of the parties, Louisa Gervitz owned the following property: Stocks, bonds, notes receivable, cash in accounts, furniture, furnishings, a house in Mexico, interests in commercial property in Mexico, and numerous items of jewelry and collectibles.

The trial court also concluded that Gervitz' separate property upon divorce included stocks and bonds held in investment accounts—specifically, accounts at Merrill Lynch and Prudential–Bache—and Treasury bills solely in her name and the names of her children. The trial court then made a "just and right" division of the community estate.

In his first two points of error, Faram challenges the legal and factual sufficiency of the evidence to support the trial court's separate property characterization of the Merrill Lynch account, the Prudential–Bache account, and a Treasury bill which totalled $58,211.75. Because these disputed properties were never specifically mentioned in the couple's pre-marital property agreement, Faram contends they are presumed to be community property subject to just and right division. In response, Gervitz claims her ownership in the two investment accounts pre-dates the marriage and maintains that the Treasury bill was purchased with proceeds from the sale of her separate property.

1. All references to Louisa Gervitz–Faram in this opinion are to her maiden name.

Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM.CODE ANN. § 5.02 (Vernon 1993). A party attempting to overcome this presumption must establish that the disputed property is separate by clear and convincing evidence. *Id.* In other words, the party claiming separate property must trace and identify the property claimed as separate property by clear and convincing evidence. Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Hilliard v. Hilliard,* 725 S.W.2d 722, 723 (Tex. App.—Dallas 1985, no writ). Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. *Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex.1975). Therefore, the ultimate issue is whether Gervitz, as the proponent, met that burden of proof at trial. *See Bradley v. Rogers,* 879 S.W.2d 947 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Celso v. Celso,* 864 S.W.2d 652 (Tex.App.—Tyler 1993, no writ).

Clear and convincing evidence is defined as that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington,* 588 S.W.2d 569, 570 (Tex. 1979). This is an intermediate standard of proof that falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *Id.* While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id.* The clear and convincing standard of proof required to overcome the community property presumption is applicable only to trial courts and does not alter the appropriate sufficiency of the evidence standard of appellate review. *In the Interest of A.D.E.,* 880 S.W.2d 241, 245 (Tex.App.—

Corpus Christi 1994, no writ); *D.O. v. Dep't of Human Servs.,* 851 S.W.2d 351, 353 (Tex. App.—Austin 1993, no writ) (citing *State v. Turner,* 556 S.W.2d 563, 565 (Tex.1977), *cert. denied,* 435 U.S. 929, 98 S.Ct. 1499, 55 L.Ed.2d 525 (1978)).

In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992); *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

A "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex. 1990); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361 (1960). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco,* 824 S.W.2d at 556.

An assertion that the evidence is factually "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determi-

nation and, if reversing, to detail that evidence in the opinion. *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex.1993).

■ We recognize that appellate courts, including this one, have struggled with what has become known as an "intermediate standard of appellate review" in cases where the burden of proof at trial is by clear and convincing evidence. This "intermediate" standard was apparently contrived from the misconception that clear and convincing evidence was incompatible with the sufficiency of the evidence standard of appellate review.[2] In fact, some appellate courts began to question using a standard of review on appeal that appeared more lenient than its evidentiary counterpart at trial. *See* n. 2. The solution was the creation of an intermediate standard of review to bridge the perceived gap between clear and convincing evidence and sufficiency of the evidence. Without question, however, the Texas Supreme Court has stated that there are only *two* evidentiary standards of appellate review: legal and factual sufficiency. *Turner*, 556 S.W.2d at 565; *Meadows v. Green*, 524 S.W.2d 509, 510 (Tex.1975). And the requirement of clear and convincing evidence is merely another method of stating that a cause of action must be supported by factually sufficient evidence. *Meadows*, 524 S.W.2d at 510; *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 410–11 (1960); *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206, 209 (1950). Simply put, appellate courts must find the measure of clear and convincing evidence sufficient to support the judgment of the trial court. For these reasons, we reject the notion that an "intermediate standard of appellate review" applies in clear and convincing evidence cases. Consequently, we believe the proper standard of appellate review, in such cases, is

factual sufficiency under *Garza* and *Jaffe. See Oadra v. Stegall*, 871 S.W.2d 882, 892 (Tex.App.—Houston [14th Dist.] 1994, no writ); *D.O.*, 851 S.W.2d at 353.

■ At trial, Gervitz testified that the investment accounts and Treasury bill in question were either gifts from her father or proceeds from the sale of real estate that she owned prior to her marriage to Faram. With no contradictory evidence, Gervitz' testimony alone provides at least some evidence of the character of the disputed property. *See Vannerson v. Vannerson*, 857 S.W.2d 659, 668 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Her testimony notwithstanding, Gervitz had no records of the transactions with which to trace or document the origin of the property. However, on the second day of trial, Faram revealed that he possessed records that would potentially corroborate Gervitz' testimony. Faram also conceded that Gervitz had previously requested the documents during discovery. Faram apparently acquired the documents from the couple's home in the summer of 1992 following their separation and then knowingly failed to produce them prior to trial.

With records in hand, Gervitz was first able to trace the source of funds used to purchase the Treasury bill back to a USAA savings account designated in the couple's pre-marital property agreement as Gervitz' separate property. Although the remaining records were incomplete, Gervitz was then able to trace the origin of the Merrill Lynch and Prudential–Bache investment accounts to a pre-marriage point in time. All account transactions were performed by stockbrokers and funds were never withdrawn during marriage. There was also no evidence of commingling of account funds. Accordingly, we

---

**2.** The "intermediate standard" states that "it is the duty of the appellate court in reviewing the evidence to determine, not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the existence of the fact is highly probable." *Neiswander v. Bailey*, 645 S.W.2d 835, 835–36 (Tex.App.—Dallas 1982, no writ); *see also Ybarra v. Texas Dep't of Human Servs.*, 869 S.W.2d 574, 580 (Tex.App.—Corpus Christi 1993, no writ); *Neal v. Texas Dep't of Human Servs.*, 814 S.W.2d 216, 219 (Tex.App.—San Antonio 1991, writ denied); *Williams v. Texas Dep't of Human Servs.*, 788 S.W.2d 922, 926 (Tex.App.—Houston [1st Dist.] 1990, no writ); *In the Interest of L.R.M. and J.J.M.*, 763 S.W.2d 64, 66–67 (Tex.App.—Fort Worth 1989, no writ); *G.M. v. Texas Dep't of Human Resources*, 717 S.W.2d 185, 187 (Tex. App.—Austin 1986, no writ). In these cases, the term "highly probable" was used in place of clear and convincing evidence.

conclude there is both legally and factually sufficient evidence to support the trial court's characterization of the two investment accounts and the Treasury bill as Gervitz' separate property. Points of error one and two are overruled.

In his third, fourth, fifth, and sixth points of error, Faram challenges the trial court's "just and right" division of community property. Faram believes the trial court abused its discretion by awarding him a disproportionate portion of community assets and liabilities.

In a decree of divorce, the trial court shall award a division of the community estate in a manner the court deems just and right, having due regard for the rights of each party. TEX.FAM.CODE ANN. § 3.63(a) (Vernon 1993). A trial court has broad discretion in making the division. *McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex.1976). Hence, the trial court's decision should be corrected on appeal only when an abuse of discretion has been shown. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex.1981); *Scott v. Scott*, 805 S.W.2d 835, 841 (Tex.App.—Waco 1991, writ denied). A court is held to have abused its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). As an appellate court, we must indulge every reasonable presumption in favor of the proper exercise of discretion by the trial court. *Castle v. Castle*, 734 S.W.2d 410, 413 (Tex.App.—Houston [1st Dist.] 1987, no writ).

A division of the community estate need not be equal, and the trial court may weigh many factors in reaching that decision. *Murff*, 615 S.W.2d at 699. For example, in exercising its discretion, the trial court may consider the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity in ages, size of separate estates, and the nature of the property. *Id.; see also Massey v. Massey*, 807 S.W.2d 391 (Tex.App.—Houston [1st

Dist.] 1991), *writ denied*, 867 S.W.2d 766 (Tex.1993); *Campbell v. Campbell*, 625 S.W.2d 41 (Tex.App.—Fort Worth 1981, writ dism'd).

By percentage, the trial court's net division of the community estate was 27.1% for Faram and 72.9% for Gervitz. In this case, the trial court took several considerations into account. A key factor was Faram's abusive and violent nature, which ultimately contributed to the divorce. In addition, Faram earned a steady income and retirement benefits; Gervitz never worked outside the home. Faram also received a large portion of the personal property acquired during the marriage. Further, the trial court found that Faram committed waste of the community estate by acquiring property, incurring debt, and escalating attorneys' fees after the couple's separation. In fact, because of Faram's conduct during the lawsuit, including his failure to disclose evidence during discovery, the trial court ordered him to pay Gervitz' attorneys' fees of over $22,000. *See* TEX.FAM.CODE ANN. § 3.65 (Vernon 1993). Based on these factors alone, we cannot say that the trial court abused its discretion.

However, Faram contends that after dividing the community estate the trial court erroneously awarded Gervitz a judgment in the amount of $40,612.75, which he argues was inequitable, punitive, and tantamount to the award of alimony. Faram also complains that the judgment decreased his share of the community estate to a negative value. After reviewing the divorce decree, we are satisfied that the judgment was appropriate.

The award of a judgment as part of the division of the community estate is often necessary where there are outstanding community obligations. *See Campbell*, 625 S.W.2d at 42. Consequently, the possibility exists that one party may end up with a negative award of community property. *See id.* In this case, the judgment accounted for Gervitz' attorneys' fees ($22,237.75), credit card debts ($5,400.00), reimbursement to Gervitz' separate property estate ($9,000.00), and a one-half interest in a loan to Gervitz'

children ($3,975.00).[3] The divorce decree also entitled Faram to a credit on the judgment for all payments of principal on the credit card debts and all payments on the loan to Gervitz' children. Once again, we cannot conclude that the trial court abused its discretion in awarding the judgment in favor of Gervitz. Accordingly, points of error three, four, five, and six are overruled.

The judgment of the trial court is affirmed.

---

3. All of these obligations, with the exception of the $9,000.00 in separate property reimbursement, were accounted for in the trial court's just and right division of the community estate in which Faram received 27.1% of the net value.