NO. 07-02-0051-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



SEPTEMBER 4, 2002



______________________________




IN THE MATTER OF THE MARRIAGE OF


KATHRYN KOENIG TAYLOR AND DON EUGENE TAYLOR




_________________________________



FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;



NO. 47,595-A; HONORABLE DAVID L. GLEASON, JUDGE



_______________________________



Before REAVIS and JOHNSON, JJ, and BOYD, SJ. (1)

 Kathryn Koenig Taylor (Kathryn) brings this appeal from a decree granting her
petition for divorce from appellee Don Eugene Taylor (Don) and dividing the couple's
community estate. Kathryn does not seek reversal of the portion of the decree terminating 
the marriage. In two issues, she challenges the trial court's characterization of two items
of property as community. We affirm.

 Don and Kathryn were married in 1985. It is undisputed that at the time of the
marriage, Don was in a longstanding farming partnership with his brother. Kathryn owned
a house which was awarded to her in a prior divorce. There were no children of the
marriage. In August 1999, the couple separated and Kathryn filed for divorce in October
1999. After a bench trial conducted in April 2001, the court rendered a decree dissolving
the marriage and making the following characterization and disposition of the parties'
property: it confirmed as Don's separate property the residence at 7201 West 36th in
Amarillo, real property located in Deaf Smith County, his interest in the Taylor Brothers
Partnership, the New York Life Insurance policy on his life, a 1998 pickup and a jeep. The
decree confirmed as Kathryn's separate property the residence at 1613 Roosevelt in
Amarillo.

 In dividing the community estate, each party was awarded household furnishings,
clothing, personal effects and cash in their possession. Each was also awarded half of an
individual retirement account (IRA). Don was also awarded an insurance policy on his life
issued by New York Life Insurance, the couple's dog, Gizmo, two horses, and all
community interest in the Taylor Brothers Partnership. In addition to the division of the IRA
and personal effects in her possession, the court awarded Kathryn any insurance policies
on her life, a 1986 Buick, 1991 Chevrolet pickup, camper, freezer, and other specific
household items. The decree ordered Don to pay a debt due to Production Credit
Association (PCA). (2) It granted Kathryn a judgment of $10,000 against Don for the purpose
of equalizing the division.

 On Kathryn's request, the trial court made findings of fact and conclusions of law. 
Again at her request, it made amended findings of fact and conclusions of law, assigning
specific values to each item of property. The court found that Don's separate property
(and values) included: a 1998 pickup acquired by inheritance ($20,000), the house at
7201 W. 36th in Amarillo ($119,000), a one-half interest in the Taylor Brothers Partnership
($334,064), real estate in Deaf Smith and Oldham Counties owned by Taylor Brothers
Partnership ($454,550), a New York Life Insurance policy ($32,000 cash value), and a jeep
($4,500). It found the residence at 1603 Roosevelt was Kathryn's separate property, but
"was impressed with a community equity in the amount of $15,106 for payments made
during the marriage which reduced the mortgage on the property." The conclusions of law
also listed numerous furnishings and household items which were her separate property.

 Kathryn now challenges the court's characterization of the life insurance policy on
Don as his separate property and "a portion of the value of . . . 1613 Roosevelt" as
community property. She presents three arguments in support of each issue.

 Under the Family Code, a court must presume that all property on hand at the
dissolution of marriage is community property. Tex. Fam. Code Ann. § 3.003(a) (Vernon
1998). A spouse may overcome this presumption by presenting clear and convincing
evidence establishing the separate nature of the property. Tex. Fam. Code Ann. §§ 3.001,
3.003(b) (Vernon 1998). Clear and convincing evidence is that measure or degree of proof
which will produce in the mind of the trier of fact a firm belief or conviction as to the truth
of allegations sought to be established. Faram v. Gervitz-Faram, 895 S.W.2d 839, 842
(Tex.App.--Fort Worth 1995, no writ). While the proof must weigh heavier than merely the
greater weight of the credible evidence, there is no requirement that the evidence be
unequivocal or undisputed. Id. 

 Kathryn's first issue assigns error to the trial court's finding that a life insurance
policy on Don, issued by New York Life Insurance, was his separate property. She argues
that the evidence is legally and factually insufficient to overcome the presumption of
community property. In reviewing the legal sufficiency challenge, we consider only the
evidence and inferences tending to support the court's findings of fact and disregard all
evidence and inferences to the contrary. Responsive Terminal Sys. Inc. v. Boy Scouts of
Am., 774 S.W.2d 666, 668 (Tex. 1989). If some evidence of probative force supports
each element, then we entertain the factually insufficient evidence contention by weighing
all the evidence. We will set aside the finding of any element only when it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

 It is undisputed that at dissolution of the marriage the policy was in effect and had
a cash value of $32,927. In addition to the presumption of community property created by
the Family Code, Kathryn relies on premium notices that show the policy was established
December 26, 1988, three years after their marriage. In response, Don cites his testimony
that the policy was the consolidation of "two or three" policies he established when he was
21 years old. He also testified that at the time of his marriage to Kathryn in 1985, the
policies had a cash value of $32,000. The only documentary evidence of prior policies he
cites is a January 1985 financial statement submitted to PCA, which listed the cash value
of life insurance as $32,000. This document did not identify the issuer of the policy or
account number. (3) Although not cited by Don, the record also contains the couple's 1985
tax return, which shows interest income of $1,468.63 from the New York Life Insurance Co. 

 The trial court found the policy had a cash value of $32,927 at divorce and that Don
traced $32,000 of the cash value to his separate property, therefore, $927 of the cash
value was community property. It awarded this amount to Don. 

 Don's testimony, 1985 financial statement, and tax return are some evidence that
he had a life insurance policy with New York Life before marriage with a cash value of
$32,000. The only evidence controverting this finding is the premium notice showing a
policy date of 1988 and the omission of the policy from some financial statements during 
the marriage. Don's testimony presented a facially credible explanation for the 1988 date
shown on the policy renewal notice. The subsequent financial statements are of limited
probative value because they simply omit any reference to cash value of life insurance as
contrasted with a showing of a declining value, or a value of zero. Based on this record,
we cannot say the controverting evidence is so overwhelming as to make the trial court's
finding contrary to the great weight and preponderance of the evidence.

 Kathryn also argues that Don seeks to use a method of valuation of separate
property, which has been expressly rejected by our courts. In In re Marriage of Greer, 483
S.W.2d 490 (Tex.Civ.App.--Amarillo 1972, writ dism'd w.o.j.), we noted the holding in 
Tarver v. Tarver, 394 S.W.2d 780 (Tex. 1965), and held a spouse did not meet their
burden to "trace and clearly identify" separate property by presenting evidence of the
value of their separate estate before marriage and the total combined estates at divorce. 
Greer is inapplicable here because Don is not seeking to establish the value of his
separate estate by showing the aggregate value of all his assets before marriage. His
evidence shows the value of a single asset before marriage to establish his separate
property interest. This is an appropriate method of tracing. We overrule Kathryn's first
issue.

 In her second issue, Kathryn argues the trial court erred in characterizing a portion
of the property at 1603 Roosevelt as community property. Kathryn's brief does not
address the nature of the community interest found by the trial court. She does not seek
to explain why the well established doctrines of equitable title or right of reimbursement
are inapplicable, but simply argues that, under the inception of title rule, the property was
separate and any finding of a community interest is "contrary to the overwhelming weight
of the evidence." She concludes that this mischaracterization resulted in a division of the
community property which was not just and right. 

 It is well established that a court may not divest a spouse of their separate property. 
Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 142 (Tex. 1977). However, the mere
mischaracterization of property will not require reversal if the division is otherwise
equitable. Magill v. Magill, 816 S.W.2d 530, 533 (Tex.App.--Houston [1st Dist.] 1991, writ
denied). We initially note that the final decree of divorce confirming 1603 Roosevelt as
Kathryn's separate property made no mention of a community interest and did not purport
to award a community interest to either party. Only in its subsequent findings of fact did
the court declare a community interest in that property and awarded that interest to
Kathryn. 

 Where a conflict exists between a trial court's judgment and subsequently issued
findings of fact and conclusions of law, the findings of fact and conclusions of law control. 
City of Laredo v. R. Vela Exxon, Inc., 966 S.W.2d 673, 678 (Tex.App.--San Antonio 1998,
pet. denied). An appellate court presented with such conflicts may modify the judgment
to resolve the conflict, but should not do so if the findings of fact or conclusions of law are
unsupported by the record or incorrect. Id. 

 It is undisputed that Kathryn had good title to the property before marriage subject
to a mortgage. It is also undisputed that monthly mortgage payments of $180 were made
during the marriage and the community estate had rental income from the property which
exceeded the mortgage payments. The record does not show her equity in the property
at the time of the marriage. 

 The trial court's findings of fact characterized the community estate as having "a
community equity" in the property. It is not clear from the court's finding whether it found
the community estate had equitable title (4) to a portion of the property, or had a right of
reimbursement, which has also been called an "equitable right of reimbursement." See
Vallone v. Vallone, 644 S.W.2d 455, 459 (Tex. 1983). In Thurmond, we held that property
purchased with separate assets, but taken in the name of both spouses, creates equitable
title in the separate estate providing the funds. 888 S.W.2d at 269. 

 The facts of this case differ from those in Thurmond in that community funds merely
enhanced the value of an asset which was clearly separate. The community interest here
can be no more than a right of reimbursement. Vallone, 644 S.W.2d at 459. In Vallone,
the court held a right of reimbursement arises when assets of one estate are used to
benefit another estate "without itself receiving some benefit." Id. 

 Here, the record shows that the income from the property exceeded the mortgage
payment and the community estate took tax deductions for maintenance of the house. We
find this undisputed evidence renders the trial court's finding error. 

 Under Texas law income from separate property is community. Lipsey v. Lipsey,
983 S.W.2d 345, 350 (Tex.App.--Fort Worth 1998, no writ); Ridgell v. Ridgell, 960 S.W.2d
144 (Tex.App.--Corpus Christi 1997, no writ). We find no authority supporting the view
that "income" under this rule means gross rather than net income. The undisputed
evidence shows that the income from rental of 1603 Roosevelt exceeded the expenses
during the entire marriage. The consequences of a contrary holding would not only be
inequitable, but would make characterization of property unduly complex. For example,
if one spouse had an interest-bearing bank account, and a portion of the interest was
deducted to pay bank fees, the community estate would not have a right of reimbursement
for fees for the amount deducted to pay the bank fees. Because it is undisputed the rental
income exceeded the mortgage payments and other expenses, Kathryn's failure to
maintain separate accounting does not alter the fact the property produced a net income. 
Moreover, this evidence compels the conclusion that granting of reimbursement would not
be appropriate because the community estate actually received a benefit. Cf. Vallone, 644
S.W.2d at 459. To that extent, Kathryn's second issue might have some merit.

 However, that does not end our inquiry. As we have noted, a mischaracterization
of property alone does not require reversal if the property division is otherwise equitable. 
Magill, 816 S.W.2d at 533. Kathryn argues that the improper finding of a $15,000 right of
reimbursement by the community was error because it had a substantial effect on division
of the community estate. This is not the applicable test. In accordance with Magill, supra,
it is appellant's burden to establish any disparity in division was the result of the
mischaracterization "and was of such substantial proportions that it constituted an abuse
of the trial court's discretion." Id. (citing Mundy v. Mundy, 653 S.W.2d 954, 957 (Tex.App.--Dallas 1983, no writ) (relying on predecessor to Tex. R. App. P. 44.1(a)). 

 The record supports Kathryn's contention that the trial court's decree awarded her
approximately 55 percent of the community estate. By excluding the erroneous $15,000
right of reimbursement found by the trial court, the percentage of the community estate
awarded to her is reduced to 50 percent. She cites no authority that the
mischaracterization resulting in an equal division of community property can be reversible
error. Indeed, our courts have held that an equal division is not an abuse of discretion,
even if the record would support a disproportionate division. See Stafford v. Stafford, 726
S.W.2d 14, 16 (Tex. 1987) (equal division affirmed where wife contracted venereal disease
as a result of husband's adultery). We overrule Kathryn's second issue. 

 In summary, both of Kathryn's issues are overruled and the judgment of the trial
court is affirmed.


 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 
2. The record is not clear on the amount of this debt. An exhibit shows an outstanding
loan to PCA of about $100,000, while Don testified that he owed over $600,000.
3. Kathryn points to Don's 1986 financial statement which shows a cash value of
$27,000. The record shows annual premiums were about $4,600, and if not paid, would
be withdrawn from the cash value to keep the policy in effect.
4. See In Re Marriage of Thurmond, 888 S.W.2d 269 (Tex.App.--Amarillo 1994, writ
denied).



tentStyles>









NO. 07-09-0300-CR

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



MAY
26, 2010

 



 

TIMOTHY MARK RAMIREZ,  

                                                                                         

                                                                                         Appellant

v.

 

THE STATE OF TEXAS,  

 

                                                                                         Appellee

___________________________

 

FROM THE 121ST DISTRICT COURT OF TERRY
COUNTY;

 

NO. 5897; HONORABLE KELLY G. MOORE,
PRESIDING

 



 

Memorandum
Opinion

 



 

Before
QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

            Timothy Mark
Ramirez was convicted of possessing at least one gram but less than four grams
of cocaine with intent to deliver.  On
appeal, he challenges the legal and factual sufficiency of the evidence showing
that he possessed the drugs and had the intent to deliver them to others.  We affirm the judgment.  

            Background

            On December 13, 2008, the Brownfield
Police Department executed a search warrant at the home of Crystal Garza.  Those present were Crystal, her two small
daughters, Sammy Martinez, and appellant. 
The latter was Crystals intermittent boyfriend and the father of the
two children.  When the police entered,
both appellant and Crystal informed them of the drugs location.  According to one officer, appellant not only
said that hell show us where everything was at but also that [t]hey had
nothing to do with it and [l]et them go. 
In a dresser upon which were placed mens underwear and socks were found
several individual packets of cocaine. 
Also discovered in the same dresser was approximately $1300 in
cash.  The cash consisted of five, ten,
and twenty dollar bills, which denominations were normally found on those  selling drugs, according to one officer.  A police scanner and a set of scales (two
items also used in the drug trade according to the officer), were discovered on
or in the dresser as well.  So too did
those searching the abode find checks payable to appellant, a crack pipe, a
black book with names and numbers in it, and plastic baggies with the corners
cut off.  Several of the latter items,
though, were found in another bedroom as opposed to the master bedroom where
the drugs and money were located.  

            Sufficiency of the Evidence 

            As
previously stated, appellant attacks the legal and factual sufficiency of the
evidence showing that he knowingly possessed the drugs with intent to
deliver.  The pertinent standards of
review are well known and need not be reiterated.  They can be found in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979) and Watson v. State, 204
S.W.3d 404 (Tex. Crim. App. 2006).  

            Next, to
convict appellant of the charged offense, the State was required to prove that
he intentionally and knowingly possessed cocaine with intent to deliver.  Tex.
Health & Safety Code Ann. §481.112(c) (Vernon Supp. 2009).  Upon perusing the record to determine whether
those elements were established, we came upon the following evidence.   

            Appellant
was in the house at the time, and though he supposedly lived elsewhere, he intended
to spend the night and was receiving friends there before the raid.  Checks addressed to him were also at the
house.  Mens boxer shorts and socks were
located in the master bedroom atop one of the two dressers; ladies
undergarments were found in the other dresser. 
The individually wrapped packets of cocaine, packets of money, scales,
and police scanner were found in or on the dresser upon which were located the
mens boxer shorts.  And, most
importantly, appellant not only directed the officers to the location of the
drugs but also said that others present should be released because they had
nothing to do with the substances.  That
the denomination of the paper money discovered coincided with that possessed by
drug traffickers was another bit of evidence upon which a rational jury could
have relied in reaching its verdict.  The
same can be said of the scales and police scanner.  Nor can we ignore Crystals testimony that
the drugs were acquired not only for her use but to distribute or give to others
or her friends.  When taken together, the
sum of this evidence was enough to permit a rational jury to link appellant to
the drugs and conclude beyond reasonable doubt that he exercised care, custody
and control over them with the intent to deliver.  Evans
v. State, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006).

            Admittedly,
Crystal testified that she owned the drugs, that appellant knew nothing of them,
that she bought them to distribute at a bachelorette party, that she was estranged
from appellant (though she already had two children by him and was pregnant
with his child at the time of trial, sought financial help from him, and allowed
him to sleep over), that she owned and wore the mens boxer shorts that were
atop the dresser, and that she owned and read the sexually explicit mens magazines
depicting nude women which were found at the house.  Yet, that simply created a question of fact
regarding who actually possessed the contraband.  So too did it raise credibility issues which
were for the jury to decide.  And, though
the jury was free to accept her version of the circumstances, it was not
required to do so.  Indeed, it could well
have concluded that she was less than truthful in order to save from prison the
father of her expected child upon whom she relied for financial assistance.  If in prison, he would not be able to provide
her the financial support which she admittedly sought from him.  That she had already been granted probation
by the time she testified and was unlikely to be further prosecuted by the time
she testified could have also been a factor considered by the jury in assessing
her veracity.  Consequently, we cannot
say that the jurys verdict was against the great weight of the evidence or
manifestly wrong.

            Accordingly,
we overrule appellants issues and affirm the judgment. 

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice

Do not publish.