NO. 07-02-0051-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

SEPTEMBER 4, 2002

_____

IN THE MATTER OF THE MARRIAGE OF
KATHRYN KOENIG TAYLOR AND DON EUGENE TAYLOR

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 47,595-A; HONORABLE DAVID L. GLEASON, JUDGE

_____

Before REAVIS and JOHNSON, JJ, and BOYD, SJ.[1]

Kathryn Koenig Taylor (Kathryn) brings this appeal from a decree granting her petition for divorce from appellee Don Eugene Taylor (Don) and dividing the couple's community estate. Kathryn does not seek reversal of the portion of the decree terminating the marriage. In two issues, she challenges the trial court's characterization of two items of property as community. We affirm.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Don and Kathryn were married in 1985. It is undisputed that at the time of the marriage, Don was in a longstanding farming partnership with his brother. Kathryn owned a house which was awarded to her in a prior divorce. There were no children of the marriage. In August 1999, the couple separated and Kathryn filed for divorce in October 1999. After a bench trial conducted in April 2001, the court rendered a decree dissolving the marriage and making the following characterization and disposition of the parties' property: it confirmed as Don's separate property the residence at 7201 West 36th in Amarillo, real property located in Deaf Smith County, his interest in the Taylor Brothers Partnership, the New York Life Insurance policy on his life, a 1998 pickup and a jeep. The decree confirmed as Kathryn's separate property the residence at 1613 Roosevelt in Amarillo.

In dividing the community estate, each party was awarded household furnishings, clothing, personal effects and cash in their possession. Each was also awarded half of an individual retirement account (IRA). Don was also awarded an insurance policy on his life issued by New York Life Insurance, the couple's dog, Gizmo, two horses, and all community interest in the Taylor Brothers Partnership. In addition to the division of the IRA and personal effects in her possession, the court awarded Kathryn any insurance policies on her life, a 1986 Buick, 1991 Chevrolet pickup, camper, freezer, and other specific household items. The decree ordered Don to pay a debt due to Production Credit

2

Association (PCA).[2] It granted Kathryn a judgment of $10,000 against Don for the purpose of equalizing the division.

On Kathryn's request, the trial court made findings of fact and conclusions of law. Again at her request, it made amended findings of fact and conclusions of law, assigning specific values to each item of property. The court found that Don's separate property (and values) included: a 1998 pickup acquired by inheritance ($20,000), the house at 7201 W. 36th in Amarillo ($119,000), a one-half interest in the Taylor Brothers Partnership ($334,064), real estate in Deaf Smith and Oldham Counties owned by Taylor Brothers Partnership ($454,550), a New York Life Insurance policy ($32,000 cash value), and a jeep ($4,500). It found the residence at 1603 Roosevelt was Kathryn's separate property, but "was impressed with a community equity in the amount of $15,106 for payments made during the marriage which reduced the mortgage on the property." The conclusions of law also listed numerous furnishings and household items which were her separate property.

Kathryn now challenges the court's characterization of the life insurance policy on Don as his separate property and "a portion of the value of . . . 1613 Roosevelt" as community property. She presents three arguments in support of each issue.

Under the Family Code, a court must presume that all property on hand at the dissolution of marriage is community property. Tex. Fam. Code Ann. § 3.003(a) (Vernon

---

[2]The record is not clear on the amount of this debt. An exhibit shows an outstanding loan to PCA of about $100,000, while Don testified that he owed over $600,000.

1998).  A spouse may overcome this presumption by presenting clear and convincing evidence establishing the separate nature of the property.  Tex. Fam. Code Ann. §§ 3.001, 3.003(b) (Vernon 1998).  Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of allegations sought to be established.  *Faram v. Gervitz-Faram*, 895 S.W.2d 839, 842 (Tex.App.--Fort Worth 1995, no writ).  While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed.  *Id.*

Kathryn's first issue assigns error to the trial court's finding that a life insurance policy on Don, issued by New York Life Insurance, was his separate property.  She argues that the evidence is legally and factually insufficient to overcome the presumption of community property.  In reviewing the legal sufficiency challenge, we consider only the evidence and inferences tending to support the court's findings of fact and disregard all evidence and inferences to the contrary.  *Responsive Terminal Sys. Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668  (Tex. 1989).  If some evidence of probative force supports each element, then we entertain the factually insufficient evidence contention by weighing all the evidence.  We will set aside the finding of any element only when it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

4

It is undisputed that at dissolution of the marriage the policy was in effect and had a cash value of $32,927. In addition to the presumption of community property created by the Family Code, Kathryn relies on premium notices that show the policy was established December 26, 1988, three years after their marriage. In response, Don cites his testimony that the policy was the consolidation of "two or three" policies he established when he was 21 years old. He also testified that at the time of his marriage to Kathryn in 1985, the policies had a cash value of $32,000. The only documentary evidence of prior policies he cites is a January 1985 financial statement submitted to PCA, which listed the cash value of life insurance as $32,000. This document did not identify the issuer of the policy or account number.[3] Although not cited by Don, the record also contains the couple's 1985 tax return, which shows interest income of $1,468.63 from the New York Life Insurance Co.

The trial court found the policy had a cash value of $32,927 at divorce and that Don traced $32,000 of the cash value to his separate property, therefore, $927 of the cash value was community property. It awarded this amount to Don.

Don's testimony, 1985 financial statement, and tax return are some evidence that he had a life insurance policy with New York Life before marriage with a cash value of $32,000. The only evidence controverting this finding is the premium notice showing a policy date of 1988 and the omission of the policy from some financial statements during

---

[3]Kathryn points to Don's 1986 financial statement which shows a cash value of $27,000. The record shows annual premiums were about $4,600, and if not paid, would be withdrawn from the cash value to keep the policy in effect.

the marriage. Don's testimony presented a facially credible explanation for the 1988 date shown on the policy renewal notice. The subsequent financial statements are of limited probative value because they simply omit any reference to cash value of life insurance as contrasted with a showing of a declining value, or a value of zero. Based on this record, we cannot say the controverting evidence is so overwhelming as to make the trial court's finding contrary to the great weight and preponderance of the evidence.

Kathryn also argues that Don seeks to use a method of valuation of separate property, which has been expressly rejected by our courts. In *In re Marriage of Greer*, 483 S.W.2d 490 (Tex.Civ.App.--Amarillo 1972, writ dism'd w.o.j.), we noted the holding in *Tarver v. Tarver*, 394 S.W.2d 780 (Tex. 1965), and held a spouse did not meet their burden to "trace and clearly identify" separate property by presenting evidence of the value of their separate estate before marriage and the total combined estates at divorce. *Greer* is inapplicable here because Don is not seeking to establish the value of his separate estate by showing the aggregate value of all his assets before marriage. His evidence shows the value of a single asset before marriage to establish his separate property interest. This is an appropriate method of tracing. We overrule Kathryn's first issue.

In her second issue, Kathryn argues the trial court erred in characterizing a portion of the property at 1603 Roosevelt as community property. Kathryn's brief does not address the nature of the community interest found by the trial court. She does not seek

6

to explain why the well established doctrines of equitable title or right of reimbursement are inapplicable, but simply argues that, under the inception of title rule, the property was separate and any finding of a community interest is "contrary to the overwhelming weight of the evidence." She concludes that this mischaracterization resulted in a division of the community property which was not just and right.

It is well established that a court may not divest a spouse of their separate property. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977). However, the mere mischaracterization of property will not require reversal if the division is otherwise equitable. *Magill v. Magill*, 816 S.W.2d 530, 533 (Tex.App.--Houston [1st Dist.] 1991, writ denied). We initially note that the final decree of divorce confirming 1603 Roosevelt as Kathryn's separate property made no mention of a community interest and did not purport to award a community interest to either party. Only in its subsequent findings of fact did the court declare a community interest in that property and awarded that interest to Kathryn.

Where a conflict exists between a trial court's judgment and subsequently issued findings of fact and conclusions of law, the findings of fact and conclusions of law control. *City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 678 (Tex.App.--San Antonio 1998, pet. denied). An appellate court presented with such conflicts may modify the judgment to resolve the conflict, but should not do so if the findings of fact or conclusions of law are unsupported by the record or incorrect. *Id.*

7

It is undisputed that Kathryn had good title to the property before marriage subject to a mortgage. It is also undisputed that monthly mortgage payments of $180 were made during the marriage and the community estate had rental income from the property which exceeded the mortgage payments. The record does not show her equity in the property at the time of the marriage.

The trial court's findings of fact characterized the community estate as having "a community equity" in the property. It is not clear from the court's finding whether it found the community estate had equitable title[4] to a portion of the property, or had a right of reimbursement, which has also been called an "equitable right of reimbursement." *See Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1983). In *Thurmond*, we held that property purchased with separate assets, but taken in the name of both spouses, creates equitable title in the separate estate providing the funds. 888 S.W.2d at 269.

The facts of this case differ from those in *Thurmond* in that community funds merely enhanced the value of an asset which was clearly separate. The community interest here can be no more than a right of reimbursement. *Vallone*, 644 S.W.2d at 459. In *Vallone,* the court held a right of reimbursement arises when assets of one estate are used to benefit another estate "without itself receiving some benefit." *Id.*

---

[4]*See In Re Marriage of Thurmond,* 888 S.W.2d 269 (Tex.App.--Amarillo 1994, writ denied).

8

Here, the record shows that the income from the property exceeded the mortgage payment and the community estate took tax deductions for maintenance of the house. We find this undisputed evidence renders the trial court's finding error.

Under Texas law income from separate property is community. *Lipsey v. Lipsey*, 983 S.W.2d 345, 350 (Tex.App.--Fort Worth 1998, no writ); *Ridgell v. Ridgell*, 960 S.W.2d 144 (Tex.App.--Corpus Christi 1997, no writ). We find no authority supporting the view that "income" under this rule means gross rather than net income. The undisputed evidence shows that the income from rental of 1603 Roosevelt exceeded the expenses during the entire marriage. The consequences of a contrary holding would not only be inequitable, but would make characterization of property unduly complex. For example, if one spouse had an interest-bearing bank account, and a portion of the interest was deducted to pay bank fees, the community estate would not have a right of reimbursement for fees for the amount deducted to pay the bank fees. Because it is undisputed the rental income exceeded the mortgage payments and other expenses, Kathryn's failure to maintain separate accounting does not alter the fact the property produced a net income. Moreover, this evidence compels the conclusion that granting of reimbursement would not be appropriate because the community estate actually received a benefit. *Cf. Vallone*, 644 S.W.2d at 459. To that extent, Kathryn's second issue might have some merit.

However, that does not end our inquiry. As we have noted, a mischaracterization of property alone does not require reversal if the property division is otherwise equitable.

*Magill*, 816 S.W.2d at 533. Kathryn argues that the improper finding of a $15,000 right of reimbursement by the community was error because it had a substantial effect on division of the community estate. This is not the applicable test. In accordance with *Magill*, *supra*, it is appellant's burden to establish any disparity in division was the result of the mischaracterization "and was of such substantial proportions that it constituted an abuse of the trial court's discretion." *Id.* (citing *Mundy v. Mundy*, 653 S.W.2d 954, 957 (Tex.App.--Dallas 1983, no writ) (relying on predecessor to Tex. R. App. P. 44.1(a)).

The record supports Kathryn's contention that the trial court's decree awarded her approximately 55 percent of the community estate. By excluding the erroneous $15,000 right of reimbursement found by the trial court, the percentage of the community estate awarded to her is reduced to 50 percent. She cites no authority that the mischaracterization resulting in an equal division of community property can be reversible error. Indeed, our courts have held that an equal division is not an abuse of discretion, even if the record would support a disproportionate division. *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987) (equal division affirmed where wife contracted venereal disease as a result of husband's adultery). We overrule Kathryn's second issue.

In summary, both of Kathryn's issues are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

10

Do not publish.