NO. 07-02-0087-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

SEPTEMBER 24, 2002

_____

IN THE MATTER OF THE MARRIAGE OF
LYBBY L. BAGGETT AND LARRY K. BAGGETT

_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 01-04-18365; HONORABLE ANDY KUPPER, JUDGE

_____

Before REAVIS and JOHNSON, JJ. and BOYD, SJ.[1]

In this appeal, Larry K. Baggett (Larry) challenges the property division in the trial

court's decree dissolving his marriage to Lybby L. Brown[2] (Lybby). In presenting his

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.

[2]In its judgment, the trial court granted Lybby's request to change her last name
from Baggett to Brown.

challenge, Larry raises five issues directly or indirectly challenging the property division. For reasons we later discuss, we affirm the judgment of the trial court.

As a predicate for discussion of this appeal, it is necessary to recite the rather complex procedural history of the case. Lybby filed an original petition for divorce on April 10, 2001. Larry filed a counter petition on May 29, 2001. The factual allegations in those petitions were inconsistent. In her petition, Lybby alleged the parties were married on January 9, 1999, and separated on April 10, 2001. However, Larry alleged the parties were married on January 9, 1995, and separated August 1, 1997. They both agreed that there were no children born to the marriage. The divorce decree giving rise to this appeal was entered on November 16, 2001.

On December 10, 2001, Larry filed a motion to modify the judgment and, in response to his request, the trial court filed findings of fact and conclusions of law on December 20, 2001. In those findings of fact and conclusions of law, the trial court found that the parties were married January 9, 1999, but the marriage had become insupportable because of discord and conflict that destroyed the legitimate ends of the marriage and prevented any reasonable expectation of reconciliation. The trial court also made findings that included a list of community property, its division, community debts and lists of each party's separate property.

On December 13, 2001, the trial court approved a substitution of counsel for Larry. Subsequent to the original findings of fact and conclusions of law, both parties filed

requests seeking additional findings of fact and conclusions of law. On January 2, Larry filed a motion to reopen the evidence to present additional exhibits tracing his separate property. On dates that do not appear in this record, both Larry and Lybby filed motions seeking the enforcement of temporary orders that had been entered by the trial court. On February 5, 2002, the trial court set all the pending motions for hearing. At the hearing, held 81 days after the final decree, Larry tendered the evidence he sought to submit and a discussion ensued as to whether the trial court had lost its plenary power. On February 14, 2002, the 90th day after the decree, Larry filed a notice of appeal and, the following day, the trial court wrote the parties that he would not rule on the pending motions because an appeal had been perfected.

In his five points of asserted error, Larry now challenges the court's characterization of certain property as community, specifically including a $29,000 certificate of deposit and shares of stock in Pfizer, Dell Computer, and AOL corporations. He also challenges the allocation of a credit card debt, as well as the denial of his motion to reopen the evidence to allow him to present additional evidence supporting his claims of separate property. He does not challenge the dissolution of the marriage.

It has long been established that in Texas, a court must presume that all property on hand at the time of the dissolution of a marriage is community property. Tex. Fam. Code Ann. § 3.003(a) (Vernon 1998). However, a spouse may overcome this presumption by establishing the separate nature of property by clear and convincing evidence. Tex.

3

Fam. Code Ann. §§ 3.001, 3.003(b) (Vernon 1998). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of allegations sought to be established. *Faram v. Gervitz-Faram*, 895 S.W.2d 839, 842 (Tex.App.--Fort Worth 1995, no writ). While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id.*

Larry's first challenge is to the trial court's finding that a certificate of deposit with a value of $29,571 was community property. Although his supporting argument does not refer to the portions of the record containing relevant evidence as required by Rule of Appellate Procedure 38.1(h), his statement of facts specifically refers to two sections of the record, which is sufficient to enable us to consider his argument.

Larry testified that his parents had sold real property to a person named McInroe and received in payment a note in the principal amount of $100,000. At the time of his father's death on March 1, 1999, the balance due on the note was $76,105.52. In April 1998, Larry inherited $67,489 from his mother. He deposited that money in his "special account" at South Plains Bank in Levelland and immediately invested $50,000 out of this account in a certificate of deposit.

In November 1999, Larry and his two siblings received equal interests in the McInroe note, each being valued at $25,368.51. He averred that he cashed his $50,000 certificate of deposit and purchased his siblings' interests in the note. He presented

4

records supporting this testimony. Earlier in the trial, Larry testified that there were three certificates of deposit, saying "one of them is [recent] because on the McInroe note . . . they paid off half of it to get out from under it and I put the money in a CD. The McInroe [CD] is twenty-nine thousand something."[3] He also testified that $8,000 of the funds for the purchase of that CD came from another unidentified CD, which he also claimed was separate property. The record contains a document dated June 19, 2001, evidencing the certificate of deposit. However, Larry did not identify, and we have not found, exhibits reflecting the payment on the McInroe note which he had identified as the source of the funds he used to purchase the CD at issue.

Lybby responds to Larry's testimony and contention and argues that he has failed to adequately trace his separate property funds because they were intermingled with community funds in the special account. Under cross-examination, Larry admitted that his earnings during the marriage were deposited in the special account and that he paid community expenses such as utility bills from that account. He also admitted that his characterization as separate or community was the only difference between amounts drawn out of the account.

When separate and community funds are commingled in a bank account, several presumptions apply when attempts are made to trace a separate property interest. Initially we are to presume that the separate funds deposited in an intermingled account "sink to

---

[3]The other certificates of deposit were for $20,000 and $36,000, making them easily distinguishable.

5

the bottom." *Hill v. Hill,* 971 S.W.2d 153, 158 (Tex.App.--Amarillo 1998, pet. ref'd). Second, we presume that community funds are withdrawn first. *Id.* Thus, to establish the separate property in an account, the party must not only show the amount of separate property deposited, but that the account balance was never below the separate property interest they assert. *Id.*

It is undisputed that the $50,000 CD Larry obtained before marriage was his separate property. A deposit slip for $53,000[4] and checks for $25,386 to his brother and sister are clear and convincing evidence that he was the sole owner of the McInroe note as his separate property and the trial court so found. However, Larry did not present any evidence that supported his contention that he used a payment of approximately $14,000 on the McInroe note to obtain the $29,000 CD, nor did he establish the source of the other funds used to purchase the CD. In making its determination as to the status of the $29,000 CD, the trial court could also consider that it was obtained approximately two months after Lybby filed her divorce petition.

As the factfinder, the trial judge was the exclusive trier of fact. He was free to consider all, part or none of a witness's testimony. *McGalliard v. Kuhlman*, 722 S.W.2d 694, 697 (Tex. 1986). In evaluating the credibility of Larry's testimony, the trial court could also consider the absence of documents supporting such a relatively large transfer of money, as well as the timing of the purchase of the instrument. Based on the record

---

[4]This amount included the $50,000, plus $3,000 interest.

before us, and considering the necessity of clear and convincing evidence to overcome the community property presumption, we cannot say the trial court's finding was against the great weight and preponderance of the evidence. Larry's first point is overruled.

In his second point, Larry similarly challenges the trial court's characterization of the Pfizer Inc. stock as community property. The trial court found that 520.5979 of the shares were community property and 252.4021 were Larry's separate property. The court's separate property finding was apparently based upon a December 1998 brokerage statement showing that at that time, Larry owned 252.402 shares.

In challenging that division, Larry testified, and now argues, that the 520 shares, which admittedly were acquired after marriage, were also separate property because the additional shares were the result of stock splits rather than purchase with community assets. He acknowledged, however, that some shares were obtained through reinvestment of stock dividends. Lybby acknowledged that there was a stock split of the Pfizer stock, but she did not know the amount of the split, nor did she know when the split occurred. Larry did not present any documentary evidence of the stock split, but rather argues that the 756 shares shown on the account statements is exactly triple the 252 shares shown on the December 1998 account statement.[5] Larry also contends that 15.7937 shares of the stock were obtained through reinvestment of dividends payable during the marriage.

---

[5]Although in his argument Larry refers to a two for one split in arriving at that figure, in fact, it would require a three for one split.

7

Even though uncontroverted, Larry's testimony concerning the stock split was indefinite and did not meet the clear and convincing standard. His argument concerning the mathematical consistency of a three for one split of his separate property stock during the marriage is persuasive, but standing alone is simply not sufficient to overturn the community property presumption. With regard to Larry's contention concerning the 15.7937 shares of stock, although cash dividends paid on stock during marriage are community property, dividends earned during coverture reinvested in additional shares of stock result in those shares being separate property. *See Ridgell v. Ridgell*, 960 S.W.2d 144, 150 (Tex.App.--Corpus Christi 1997, no pet.). Even so, Larry's testimony that some shares of stock were obtained through the reinvestment of dividends, even though uncontroverted, is too indefinite and lacking in corroboration to satisfy the clear and convincing evidence rule. Larry's second point is overruled.

In his third point, Larry challenges the trial court's characterization of 50 shares of stock in Dell Computer (Dell) and 150 shares of America Online (AOL). At trial he testified, and presented documents supporting the testimony, that he purchased 50 shares of Dell and 50 shares of AOL on February 22, 1999, using funds from his special account. A brokerage account statement dated June 13, 2001, showed he owned 100 shares of Dell and 200 shares of AOL. As with his Pfizer stock, Larry argues the increases were due to stock splits rather than additional purchases because, he avers, he never purchased any additional shares. Other than the difference in the number of shares he purchased on February 22, 1999, and the number of shares he owned on June 13, 2001, there is nothing

8

in this record showing that any increase was the result of a stock split. Indeed, Larry's testimony concerning the stock splits is very indefinite. For example, with regard to the AOL stock, he initially averred that the increase was the result of a two for one split, but when the trial court pointed out that the later statement showed 200 shares instead of 100 shares, Larry opines, "[w]ell maybe it split another time." This type of uncorroborated evidence falls short of meeting the clear and convincing standard and we cannot fault the trial judge in arriving at his obvious conclusion that the testimony was not sufficient to overcome the community property presumption. Appellant's third point is overruled.

In his fourth point, Larry argues that the trial court erred in failing to assign a credit card debt to Lybby. His complaint arises from a temporary order filed on June 22, 2001, in which the trial court, *inter alia*, directed Lybby to pay "charges made on Larry['s] MBNA America credit card by Lybby . . . after the date of separation, within 30 days from the date of [the] order." However, in his final decree, the trial court allocated the debt equally between the parties. At the February 5, 2002 hearing, the evidence showed that Lybby paid $600 on the debt, but she stopped making payments when Larry failed to meet his temporary support obligations. Larry testified that the balance due on the account was $3775.30. In supporting his contention that the trial court erred in failing to assign that balance to Lybby, he argues that the trial court's order is contradictory because, in addition to allocating the debt equally, it also provides that all prior orders of the court "not yet discharged shall survive this judgment and independent enforcement may be sought."

As we have noted, the judgment which Larry challenges was entered on November 16, 2001. On December 20, 2001, the trial court entered findings of fact and conclusions of law in which it specifically found the credit card debt to be a community debt and directed each party to pay one-half of the debt. However, in an instance such as that before us, findings of fact and conclusions of law filed after a judgment are controlling if there is any conflict between them. *City of Laredo v. R. Vela Exxon, Inc.,* 966 S.W.2d 673, 678 (Tex.App--San Antonio 1998, pet. denied). That being the rule, the court's expression in those findings of fact and conclusions of law would govern over any conflicting provision in the divorce judgment. Larry's fourth point is overruled.

In his fifth and final point, Larry alleges the trial court abused its discretion in failing to grant his motion to reopen the evidence and in refusing to modify the judgment. The only authority he cites in support of that position is Texas Rule of Civil Procedure 329b. That rule, and the cases applying it, stand for the proposition that a motion to modify, correct, or reform a judgment, extends the plenary power of a court over its judgment for a period of 30 days from the overruling of the motion. While this is a correct statement of that law, it is not applicable to a motion to reopen evidence. A trial court's power to permit additional testimony is governed by Rule of Civil Procedure 270, which provides:

> When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time, provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury.

10

The rule does not specify a time limit and Lybby does not argue the trial court had lost its power to reopen the evidence.[6] The decision to reopen evidence is committed to the sound discretion of the trial court and will not be reversed absent a clear abuse of that discretion. *In re Hawk*, 5 S.W.3d 874, 876 (Tex.App.--Houston [14th Dist.] 1999, no pet.).

Factors relevant to a trial court's decision to reopen evidence include: 1) the diligence of a party in presenting its evidence, 2) whether reopening the record will cause undue delay, 3) whether granting a motion to reopen evidence will do an injustice, and 4) whether evidence to be introduced is decisive. *Id.* In his brief, Larry asserts that granting the motion "would have been in the interest of fundamental justice and fairness and amply supported by the record." He does not address any of the other factors. Larry's failure to show the exercise of diligence in presenting his evidence is dispositive. In seeking to introduce documentation supporting his testimony concerning the stock split at the February 5, 2002 hearing, Larry's counsel[7] stated, "I, of course, was not here and am not prepared to say one way or the other why those records were, apparently an oversight, never produced for the court to look at, but they're very clear." That was the only discussion as to why the evidence was not produced earlier and it is not sufficient to show Larry's trial diligence. Under this record, we cannot say that the trial judge's refusal to reopen the evidence was a clear abuse of discretion. Larry's fifth point is overruled.

---

[6]Because Larry had timely filed a motion to modify or correct the trial court's decree, the court's plenary power over the decree extended for 30 days after that motion was overruled, here March 1, 2002. *See* Tex. R. Civ. P. 329b(e).

[7]Larry's appellate counsel was not his trial counsel.

11

In final summary, all of Larry's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.