Corrine BRANTMEIER, Appellant,

v.

BRAZORIA PROTECTIVE SERVICES UNIT, TEXAS DEPARTMENT OF HUMAN RESOURCES, Appellee.

No. 01–83–0020–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 13, 1983.

Joe Silvas, Clute, for appellant.

Jim Mapel, Angleton, for appellee.

Before WARREN, DOYLE and DUGGAN, JJ.

OPINION

WARREN, Justice.

This is an appeal from a judgment terminating appellant's parental rights to her daughter.

In support of the termination, the court, sitting without a jury, found: (1) that appellant knowingly placed or allowed the child to remain in conditions or surroundings which endangered the physical and emotional well-being of the child, and (2) that appellant engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child, and that termination was in the best interest of the child.

In three points of error, appellant urges that the court erred in terminating her parental rights because the evidence supporting the court's findings was not clear and convincing.

The undisputed evidence shows that the natural father sexually molested his 5 year old minor daughter, and that appellant, after learning of the acts, allowed the daughter to remain in the household. The evidence is disputed as to whether additional acts occurred after the father admitted the misconduct to appellant.

██ A finding that the parent-child relationship should be terminated must be supported by clear and convincing evidence. *In the Interest of G.— M.——,* 596 S.W.2d 846 (Tex.1980). This is an intermediate standard of proof requiring a greater persuasive force than the preponderance of the evidence standard used in civil cases but a less persuasive force than the reasonable doubt standard used in criminal cases. There is no requirement that the evidence be unequivocal or undisputed. *State v. Addington,* 588 S.W.2d 569 (Tex.1979).

Even before appellant learned in February 1981, that her husband was having sexual contact with their 5 year old daughter, she suspected that it was happening. Before the little girl was born, the husband told appellant of his sexual fantasies toward a prospective daughter. For this reason, appellant hoped that the child would be a boy. When appellant's suspicions of sexual activity between her daughter and husband were confirmed in February 1981, she contacted her pastor for counseling. The pastor counseled with appellant and her husband until July 23, 1981, when he told them that they should obtain a more qualified counselor. During that period of counseling, the pastor was never informed that there had been sexual contact between the husband and child, but only that the husband had "feelings" toward the daughter. Appellant allowed the husband to remain in the home with the minor until the minor was removed, and thereafter until the husband was incarcerated.

In July 1981, appellant, her husband and their daughter began counseling with Mrs. Marty Jones, a registered nurse, who also received a masters degree in psychology, and had taken post graduate work in family therapy and child abuse. Her testimony as a witness for appellant showed that she was unalterably opposed to terminating the parent-child relationship in this case. She testified that she had been counseling with appellant for 14 months and counseled with the husband until he was transferred to prison after having been convicted of sexual abuse of a child; that in a case such as this, her objectives are twofold, the first objective is to protect the child, and the second is to preserve or unite the family; that appellant was a caring and concerned parent and was not a present or future threat to the physical or emotional well-being of the child; that she felt with long term therapy any damage to the child and to the mother-daughter relationship could be mended. She agreed that the child had been damaged by her father's molestation.

Mrs. Madeline Fouts, the first Human Resources case worker to visit appellant and her family, testified that appellant told her she knew of the sexual abuse two years before reporting it, that she had observed her husband fondle and molest the child, and that she could not leave the house without returning to find her husband in bed with the child. She also testified that appellant told her she did not know how to protect the child and had very negative feelings toward the child after the incest began; that the child had complained of an irritation and pain in the vaginal area, which appellant did nothing about. Appellant denied having told Mrs. Fouts most of these things, but did admit that she told her of the husband speaking of what he was going to sexually do with the little girl, and that she was jealous of the child. Appellant further admitted telling Mrs. Fouts that at the age of three the child knew things about sex that no three year old would know, but that this only aroused her suspicions that the father and child were engaging in sexual contact.

Mrs. Louise Clawson, the child's foster parent since August 1981, testified that when the child came to live with her she was frail, withdrawn, and had a vaginal infection; that the child sexually acted out before other children; that the infection was cured, the child had quit the sexually "acting out", and she was happy. Mrs. Clawson further testified that on the night after a visitation with appellant and her husband on April 14, 1982, the child came into her bedroom, woke her up, and complained of a stomach ache. The child stated that the father had sex with her. She examined the child's vagina and saw that it was irritated. Mrs. Clawson also testified to hearing a phone conversation with the child and appellant, following that visit, wherein appellant told the child not to tell what happened during the visit because "daddy would be put back in jail."

On cross examination, Mrs. Clawson admitted that the child had expressed a desire to see her mother and brothers.

Linda Smith, the second social worker assigned to the child's case, testified that she had visited with the father, the appellant, and the child; that she thought the parental relationship should be terminated because once the father got out of prison, neither appellant nor the child would be able to protect the child from the father. On cross examination she admitted that with counseling, appellant might be able to provide for the emotional needs of the child, and that the mother was not a threat to the physical development of the child.

Appellant admitted knowledge of her husband sexually abusing another minor female before she definitely learned of the sexual abuse of their daughter. She also admitted that she had engaged in incestuous relationships with her brother, which resulted in the birth of a child, and that she moved to Texas in an effort to terminate this relationship.

■ Tex.Family Code Ann. § 15.02(2) requires that not only must there exist a requisite ground for termination, such as surroundings dangerous to the child, there must also be a finding that such termina-

tion be in the best interest of the child. *Arnold v. Caillier*, 628 S.W.2d 468 at 469 (Tex.Civ.App.—Beaumont 1981, no writ).

■ The Texas Supreme Court set out in *Holley v. Adams*, 544 S.W.2d 367 (Tex.1976), a list of factors to be considered in making this determination. They include the desires of the child, the emotional and physical needs of the child now and in the future, emotional and physical danger to the child, parental abilities of the parties, programs available to assist the parents contrasted with adoption alternatives, acts or omissions indicating the unhealthiness of the parent-child relationship and excuses for such acts or omissions.

Although the law places no such limitation on the trial judge, in this case the judge could have found on the basis of the undisputed testimony, that appellant knowingly allowed the child to remain in conditions or surroundings which endangered the physical and emotional well-being of the child, and that the termination was in the best interest of the child.

These findings satisfy the requirements of Texas Family Code, § 15.02(1)(D) and 15.02(2).

The plight of appellant is a pitiable one and one not entirely of her own making. However, even viewing the evidence in a light most favorable to her, we can only conclude that she is unable to overcome her impediments to successfully rearing her minor daughter. Her feelings toward her daughter are ambivalent; she has two other male children to rear; she is still emotionally or economically dependent on her husband, who will be returning soon from prison; and she has no skills necessary to enable her to support three children.

The findings of the trial court, that appellant knowingly placed or allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child, and that the parental relationship between appellant and her minor daughter should be terminated, are supported by clear and convincing evi-

dence. Therefore, appellant's first and third points of error are overruled.

We have considered appellant's remaining point of error and find that it is unnecessary to our determination of the cause; therefore, it will not be discussed in this opinion.

The judgment is affirmed.