**Sarah Hilliard WILLIAMS, Appellant,**

v.

**TEXAS DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 01–89–00273–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 26, 1990.

Robert A. Monks, Houston, for appellant.

Michael J. Guarino, Dist. Atty., Larry Fox, Asst., Davie A. Jameson, Galveston, for appellee.

Before SAM BASS, DUNN and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

Sarah Hilliard Williams (Hilliard) appeals from a decree ending her parental rights to A.W. We reverse and render.

Hilliard is A.W.'s natural mother; Galvin Williams is A.W.'s natural father.[1] Before A.W. was born, the University of Texas Medical Center in Galveston told the Galveston County Children's Protective Services (CPS),[2] that, in its opinion, Hilliard would not be able to provide care for the child. After A.W. was born, CPS tried to enroll Hilliard in classes where she could learn parenting and homemaking skills. Hilliard did not attend any classes.

In April of 1985, when A.W. was one month old, CPS filed a suit affecting the parent-child relationship, and applied for an emergency order to seize A.W. CPS alleged A.W. was in immediate danger due to instability and reports of violence in the parents' home. In May of 1985, CPS placed A.W. in foster care. The trial court appointed the child placement director of CPS as temporary managing conservator of A.W.

In June of 1985, the court placed A.W. in the care of Nyla and John Williams ("the Williams"), A.W.'s paternal aunt and uncle. In September of 1985, the trial court removed Hilliard and Galvin Williams as managing conservators and appointed the child placement director of CPS as managing conservator of A.W. In June of 1986, the trial court appointed the Williams as temporary managing conservators of A.W. Except for the first 10 weeks of life, A.W. has never lived with Hilliard.

In April of 1987, CPS filed suit to terminate the parent-child relationship between Hilliard and A.W. On December 6, 1988, after a nonjury trial, the court entered a decree of termination. The decree states that Hilliard knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and engaged in conduct, or knowingly placed the child with persons who engaged in conduct, which endangers the physical or emotional well-being of the child. The decree also states that termination was in the best interest of the child.

We note that Hilliard did not take any steps to regain custody of A.W. At the hearing, Hilliard specifically stated she did not want to challenge the Williams' custody of A.W.; all she wanted was to retain her parental rights.

In Hilliard's only point of error, she asserts that the trial court erred in terminating her parental rights because there is not enough evidence to support the court's findings.

## I. Evidence to terminate

We must divide the evidence of Hilliard's treatment of A.W. into two periods: When Hilliard had had custody of A.W., and after she lost custody. The State also wants us to consider Hilliard's treatment of her other children.

### A. *Hilliard's treatment of A.W. when she had custody*

Hilliard had custody of A.W. for two months in 1985, when she was 17 years old. Hilliard had few, if any, parenting skills.

The CPS representative testified that, when A.W. had gastroenteritis, Hilliard: mixed the baby formula incorrectly; used nonsterilized water for the formula; did not wash her hands before preparing the formula; dropped nipples on the floor and never washed them off; fed A.W. when she vomited and had diarrhea. CPS's representative testified infants can die within 24 hours if they have diarrhea and do not get the proper fluids.

Hilliard took A.W. to the Women's Crisis Shelter when these problems arose. The volunteers at the shelter took A.W. to the hospital. Hilliard also said she took A.W.

---

1. Galvin Williams voluntarily terminated his parental rights.

2. CPS is a division of the Child Welfare Division of the Department of Human Services.

to the doctor and to the hospital when she was sick. She said that when the baby bottle dropped on the floor, she cleaned the nipple before giving it back to A.W.

The CPS representative testified that Hilliard changed residences more than eight times during the first 10 weeks of A.W.'s life. Hilliard left one residence with only one diaper and no formula.

CPS's representative also testified that when A.W. was three weeks old, A.W. was in the middle of a "tug-of-war" between Hilliard, Galvin Williams, and another adult. Hilliard testified that Galvin Williams tried to take A.W. away from her.

### B. *Hilliard's treatment of A.W. after she lost custody*

Since 1985, when Hilliard lost custody, Hilliard has acquiesced to the court's orders, leaving A.W. with the temporary and permanent managing conservators. The only contacts Hilliard has had with A.W. were during visits at the Williams' home. Hilliard last saw A.W. two or three years before the hearing. Hilliard said she sent presents to A.W., but they were always returned.

Since losing custody of A.W., Hilliard has lived in Galveston, Houston, Virginia, Tennessee, Florida, and Georgia. She has no permanent home. Hilliard has continually changed residences, staying with relatives, friends, or charitable associations. Hilliard gets some support from her family.

### C. *Hilliard's treatment of her other children*

Hilliard testified that she was the mother of five children. Her first child, Brandon, was removed from her care when he was ten and one-half months old. Another child, born before A.W., died of complications shortly after birth as a result of Hilliard's failure to get prenatal care. Another son, Andrew, born after A.W., was removed from her care when he was 17 days old. Andrew now is in the custody of Hilliard's sister. Hilliard also miscarried one child.

### II. Termination of parental rights under section 15.02

Section 15.02 of the Texas Family Code governs involuntary termination of parental rights.[3] The trial court's termination order reflects that it decided to terminate Hilliard's parental rights under subsections (1)(D), (1)(E), and (2), which state:

A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; and ...

(2) termination is in the best interest of the child.

To support the trial court's ruling, we must find that the State produced evidence that Hilliard engaged in conduct described in subsection (1)(D) *or* (1)(E). Hilliard does not challenge the finding that the termination is in the best interest of A.W.

The termination of parental rights involves fundamental constitutional rights. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). Thus, the evidence supporting the findings to terminate parental rights must be clear and convincing, not just preponderate. *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980); *Clark v. Dearen*, 715 S.W.2d 364, 365 (Tex.App.—Houston [1st Dist.] 1986, no writ). The clear and convincing standard requires more proof than the preponderance of the evidence standard in civil cases, but less than the reasonable doubt standard in criminal cases. *In the Interest of G.M.*, 596 S.W.2d at 847; *Brantmeier v. Brazoria Protective Serv. Unit*, 661 S.W.2d 234, 235 (Tex.App.—Houston [1st

---

**3.** All references to section 15.02 are to Tex.Fam. Code Ann. § 15.02 (Vernon 1986).

Dist.] 1983, no writ). The Texas Supreme Court has explained the clear and convincing standard is the degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be proved. *In the Interest of G.M.*, 596 S.W.2d at 847.

On the appeal of a fact finding made by clear and convincing evidence, we review the record to determine if the trial court could reasonably find that the fact was highly probable. *See Wetzel v. Wetzel*, 715 S.W.2d 387, 389 (Tex.App.—Dallas 1986, no writ). Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the facts. *In the Interest of P.S.*, 766 S.W.2d 833, 835 (Tex.App.—Houston [1st Dist.] 1989, no writ).

Appellants traditionally challenge the evidence to support fact findings with two arguments: legal sufficiency and factual sufficiency. When an appellant challenges a finding on which he had the burden of proof, the appellant uses points of error that contain the legal challenge, "the finding is wrong because the issue was proved as a matter of law," and the factual challenge, "the finding is against the great weight and preponderance of the evidence." When an appellant challenges a finding on which the appellee had the burden of proof, the appellant uses points of error that contain the legal language, "no evidence to support the finding," and the factual challenge, "there is insufficient evidence to support the finding."

Here, Hilliard asserts no legal sufficiency challenges. In her only point of error, Hilliard complains that the evidence was factually insufficient *and* against the great weight and preponderance of the evidence. Because the burden below was on the State, the only appropri-

ate challenge to the findings was that the evidence was factually insufficient.[4]

One court recently attempted to explain how we review the evidence under a factual sufficiency challenge: When reviewing a finding made by clear and convincing evidence, the court of appeals will sustain an insufficient evidence point of error only if the fact finder could not have reasonably found the fact was established by clear and convincing evidence. *In the Interest of L.R.M.*, 763 S.W.2d 64, 66–67 (Tex.App.—Fort Worth 1989, no writ).

### A. Subsection (1)(D)—The child's environment

Under subsection (1)(D), the State must show that the parent knowingly placed or permitted the child to remain in an *environment* that endangers the child's physical or emotional well-being. *In the Interest of P.S.*, 766 S.W.2d at 835; *In the Interest of S.H.A.*, 728 S.W.2d 73, 84 (Tex. App.—Dallas 1987, no writ). Thus, subsection (1)(D) refers only to the suitability of the child's living conditions. *Stuart v. Tarrant County Child Welfare Unit*, 677 S.W.2d 273, 280 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). The State must show that the child's living conditions pose a real threat of injury or harm. *Id.*

### B. Subsection (1)(E)—The parent's conduct

Different proof is required to support a finding based on subsection (1)(E). Under subsection (1)(E), the State must show that the parent engaged in *conduct* or placed the child with persons who engaged in conduct that endangers the child's physical or emotional well-being. Under subsection (1)(E), the source of the danger to the child must be the parent's conduct, either the parent's acts or omissions. *In the Interest of S.H.A.*, 728 S.W.2d at 85.

---

4. The factual sufficiency challenge, "by the great weight and preponderance of the evidence," is not appropriate to challenge a finding made by clear and convincing evidence. The reason it is not appropriate is that the challenge refers to the wrong burden below, the "preponderance" of the evidence. Instead, the challenge should refer to the "clear and convincing" burden. When a party challenges the factual sufficiency of the evidence to support findings that were made by clear and convincing evidence, the party should state that the finding is "against the great weight and the clear and convincing evidence."

The term "endangers" is more than just the threat of abstract injury or the possible ill effects of a less-than-ideal family environment. *Texas Dept. of Human Serv. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). An *exposure* to loss or injury is sufficient, however. *Id.*[5] The parental conduct need not be directed at the child, and the child need not actually suffer injury. *Allred v. Harris County Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Danger to the child is inferable from the parental misconduct. *Boyd*, 727 S.W.2d at 533.

### III. Termination of Hilliard's parental rights

#### A. *A.W.'s environment*

If there was any environmental danger to A.W., it was during the two months in 1985 when A.W. was in Hilliard's custody. The State stressed that Hilliard did not have a home of her own, and she constantly changed locations, often without A.W.'s diapers or formula. The State did not show, however, that these locations posed a danger to A.W.

Since April of 1985, Hilliard has not posed an environmental danger to A.W.

#### B. *Hilliard's conduct*

The major problem, as identified by the State, is that Hilliard did not take proper care of A.W. for a two-month period in 1985 when A.W. was sick. On this record, it appears Hilliard took some steps to care for A.W.'s health, although those steps were tardy and might have been inadequate if CPS had not intervened.

Since April of 1985, when A.W. was placed in protective conservatorship, there is very little evidence that Hilliard engaged in conduct that endangered the child's physical or emotional well-being. Hilliard's only conduct that shows she is still inadequate as a mother is that Hilliard did not visit A.W. very often. She did send A.W. gifts during that time. Nyla Williams testified that during Hilliard's visits with A.W., Hilliard behaved inappropriately by teasing A.W. and handling A.W. in a rough manner.

### IV. This Court's finding

Although Hilliard did not challenge the finding that termination is in the best interest of the child, that finding alone is not sufficient to support the trial court's order. The trial court may not terminate the parent-child relationship solely on the finding that it is in the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex.1976). Before it can terminate parental rights, the court must also find that the parent engaged in conduct described in subsections (1)(D) and (E).

The testimony of the CPS representative shows that Hilliard did not adequately care for A.W. for two months in 1985 when she was 17 years old. A.W.'s only exposure to injury occurred during the first two months of A.W.'s life, when A.W. was sick with gastroenteritis. The record shows, however, that Hilliard took A.W. to the Women's Crisis Shelter and A.W. was then taken to the hospital.

We find that the judge, as the fact finder, could not have reasonably found, by clear and convincing evidence, that Hilliard engaged in conduct described in either subsection (1)(D) or (1)(E) in 1985. We agree that Hilliard's living conditions and her treatment of A.W. were less than ideal in the two months she had custody of A.W. All of this occurred in a two-month period in 1985 when Hilliard was 17 years old.

We find that the judge, as the fact finder, could not have reasonably found, by clear and convincing evidence, that Hilliard engaged in conduct described in either subsection (1)(D) or (1)(E) since 1985. Even though Hilliard has not been a model parent since 1985, there is no evidence that Hilliard engaged in conduct described in either subsection (1)(D) or (1)(E) since 1985.

---

5. Danger means the exposure to harm or injury; the condition of being exposed to the chance of evil, risk, or peril. IV Oxford English Dictionary 241 (2d ed. 1989).

Her greatest error has been her infrequent visits to A.W.[6]

We sustain Hilliard's sole point of error and order Hilliard's parental rights to be reinstated.

---

**6.** Our judgment does not change the Williams' custody of A.W. Before custody could change, Hilliard would have to file a petition with the trial court and prove changed circumstances under TEX.FAM.CODE ANN. § 14.08 (Vernon 1975).