IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-176-CV





DAVID LEE ENGLEHARDT,



 APPELLANT


vs.





TEXAS DEPARTMENT OF HUMAN SERVICES,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 478,180, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING



 





PER CURIAM



 Appellant David Lee Englehardt appeals from a decree of termination of parental
rights rendered by the district court of Travis County. The district court terminated the parent-child relationship between Englehardt and his daughter Amy Lynn Otis. (1) See Tex. Fam. Code
Ann. § 15.02 (West Supp. 1993). The district court appointed appellee Texas Department of
Human Services ("TDHS") as permanent managing conservator. We will affirm the order of the
district court.

 A court may terminate a parent-child relationship upon a finding of specific conduct
under § 15.02(1) of the Family Code and a finding that termination is in the child's best interest. 
Tex. Fam. Code Ann. § 15.02(1),(2) (West Supp. 1993); Texas Dept. of Human Servs. v. Boyd,
727 S.W.2d 531, 533 (Tex. 1987); Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976); Smith
v. Sims, 801 S.W.2d 247, 250-51 (Tex. App.--Houston [14th Dist.] 1990, no writ). Here, the trial
court found: (1) that Englehardt had knowingly placed Amy, or knowingly allowed her to remain,
in conditions or surroundings that endanger her physical or emotional well-being, § 15.02(1)(D);
(2) that he had engaged in conduct, or knowingly placed Amy with persons who engaged in
conduct, that endangers her physical or emotional well-being, § 15.01(1)(E); and (3) that
termination was in Amy's best interest, § 15.01(2).

 In two points of error, Englehardt contends that no evidence or, alternatively,
insufficient evidence exists that he committed the acts described in §§ 15.02(1)(D) and (E). The
evidence to support these findings, only one of which is necessary to support the termination,
must be clear and convincing. In re G.M., 596 S.W.2d 846, 847 (Tex. 1980); Allred v. Harris
County Child Welfare Unit, 615 S.W.2d 803, 805 (Tex. Civ. App.--Houston [1st Dist.] 1980, writ
ref'd n.r.e.). The clear and convincing standard of proof requires "that measure or degree of
proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth
of the allegations sought to be established." In re G.M., 596 S.W.2d at 847; Neal v. Texas Dept.
of Human Servs., 814 S.W.2d 216, 222 (Tex. App.--San Antonio 1991, writ denied). Englehardt
does not challenge the finding that termination was in Amy's best interest.

 In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding and disregard all evidence and inferences to the contrary. Alm v.
Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986); Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).

 To determine whether the evidence is factually sufficient, this Court considers and
weighs all the evidence and should set aside the judgment only if it so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); Otis v.
Texas Dept. of Human Servs., No. 3-91-228-CV, slip op. at 3-4 (Tex. App.--Austin March 17,
1993, n.w.h.); In re B.R., 822 S.W.2d 103,106 (Tex. App.--Tyler 1991, writ denied). We
examine the legal sufficiency of the evidence first. Glover v. Texas Gen. Indem. Co., 619 S.W.2d
400, 401 (Tex. 1981).

 Englehardt combines his argument relating to the two subsections of § 15.02(1). 
Because only one of these findings is necessary to support the decree of termination we will first
review the evidence as to the finding under § 15.02(1)(E). See Williams v. Texas Dept. of Human
Servs., 788 S.W.2d 922, 926 (Tex. App.--Houston [1st Dist.] 1990, no writ); Jones v. Dallas
County Child Welfare Unit, 761 S.W.2d 103, 109 (Tex. App.--Dallas 1988, writ denied). Under
subsection (1)(E), the source of danger to the child must be the parent's conduct, either his acts
or omissions. Williams, 788 S.W.2d at 926.

 Englehardt and Kathy Otis were married in June 1988; Amy was born in January
1989. Englehardt testified that he has three felony convictions and was first incarcerated when
Amy was four months old. At the time of the trial, he was serving a ninety-nine year sentence
in the Texas Department of Criminal Justice-Institutional Division for sexual assault. Englehardt
committed the assault in May 1990, only a few weeks after his release from prison in March
1990. 

 Kathy Otis testified that Englehardt had assaulted her on several occasions when
her children (2) were present, that she did not remember how many times he had assaulted her, and
that "when David gets mad . . . he wants to beat up somebody." She described an incident in
May 1989 when Englehardt tried to grab Amy from the truck in which Kathy, the two children,
and Christine Carlson, a friend, were riding. When Englehardt could not get Amy, "he punched
Chris and punched Chris and punched Chris, knocked her into a telephone pole and drove me
down to the woods and the police looked for me for two hours and they couldn't find me."

 Kathy Otis then described a second incident in July 1989 when she refused to leave
the Carlsons' house with Englehardt. She testified, "He got mad and he started packing up stuff,
throwing them in the car and he tore the house all up. I mean, ripped the phone out, broke
personal items of Ms. Carlson's" and shut a window on Carlson's thumb "and I think her thumb
was broken." Otis testified further that, at that time, she told Carlson she did not want to leave
with Englehardt because she was afraid he would hurt either her or the children. Both Kathy Otis
and David Otis testified to an assault on Kathy by Englehardt in June 1989.

 Kathy Otis also testified that, during their marriage, she, her two children, and
Englehardt lived with David Otis, her former husband; her parents; or Curtis and Christine
Carlson. Kathy Otis is currently serving a twenty-year sentence for kidnapping a man who was
later murdered. TDHS took the two children into custody at the time Kathy Otis was arrested in
January 1990. We conclude that there is some evidence to support the finding that Englehardt
"engaged in conduct or knowingly placed [Amy] with persons who engaged in conduct which
endangers the physical or emotional well-being of the child." § 15.02(1)(E).

 Englehardt's factual-sufficiency argument as to § 15.02(1)(E) must also fail. 
Englehardt did not refute any of the testimony describing his criminal record and the several
assaults. The evidence does show, however, that Amy was not present when Englehardt assaulted
Kathy in June 1989 and it is unclear whether Amy was present when Englehardt insisted that
Kathy and the children leave the Carlsons' house in July 1989.

 Englehardt testified further that he will be eligible for parole in 1996 but does not
know whether he will be released then, and that he has a problem with anger control but has never
been concerned that he would injure Amy. After Englehardt's incarceration, Amy remained with
her mother until January 1990. Englehardt testified that Kathy Otis had always been a good
mother and that Amy has always had a clean and adequate place to live. The evidence shows,
however, that Kathy Otis was convicted in 1985 of injury to a child for failure to procure medical
treatment and sentenced to five years in prison. Having considered all of the evidence, we
conclude that the evidence is factually sufficient to support a finding under § 15.02(1)(E).

 Englehardt asserts generally that the TDHS did not "demonstrate and prove by clear
and convincing evidence the connection between [his] course of criminal conduct and Amy's well-being." Section 15.02(1)(E) requires proof of conduct that endangers or jeopardizes a child's
physical or emotional well-being. A trial court may consider a parent's imprisonment as a factor
relevant to the issue of endangerment to the child. Boyd, 727 S.W.2d at 533. The parental
conduct need not be directed at the child and the child need not suffer actual injury. Id.; Allred,
615 S.W.2d at 806. Danger to the child is inferable from the parental conduct. Boyd, 788
S.W.2d at 533; Williams, 788 S.W.2d at 927; see Smith, 801 S.W.2d at 251.

 We conclude that the evidence here, including Englehardt's imprisonment and
criminal conduct, shows a course of conduct that has the effect of endangering Amy's physical
or emotional well-being and supports a finding under § 15.02(1)(E). Accordingly, we need not
review the evidence pertaining to the finding under § 15.02(1)(D). We overrule Englehardt's
point of error on the basis discussed.

 The decree of termination of the parental rights of David Lee Englehardt is
affirmed.


[Before Justices Powers, Aboussie and B. A. Smith]

Affirmed

Filed: March 17, 1993

[Do Not Publish]

1.   By the same order, the district court also terminated the parent-child relationship
between Amy and her mother Kathy Otis. This Court dismissed the appeal of Kathy Otis
for want of jurisdiction. Otis v. Texas Dept. of Human Servs., No. 3-91-332-CV (Tex.
App.--Austin April 1, 1992, no writ) (not designated for publication).
2.   The children are Amy and Tracy Nicole Otis, Amy's half-sister. The district court also
terminated the parental-child relationship between Tracy and Kathy Otis and between Tracy
and her father David Otis.