02-11-420-CV REH









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00420-CV


 
 
 In the Interest of K.E.S., a Child
 
 
  
 
 
  
 
 
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 


----------

FROM THE 323rd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1] ON
REHEARING

----------

We
have considered appellee Department of Family and Protective Services’ (DFPS)
motion for rehearing.  We deny the motion but withdraw our July 12, 2012
opinion and substitute the following. 

Appellants
K.W. (Father) and G.S. (Mother) appeal the trial court’s judgment terminating
their parental rights to their child, “Kurt.”[2] 
After a bench trial, the trial court found by clear and convincing evidence
that Mother and Father had engaged in conduct or had knowingly placed Kurt with
persons who had engaged in conduct which endangered Kurt’s physical or
emotional well-being; that they had knowingly placed or knowingly allowed Kurt
to remain in conditions or surroundings which endangered his physical or
emotional well-being; that Father failed to file an admission of paternity or
register with the paternity registry; that Mother constructively abandoned
Kurt; and that termination of Mother’s and Father’s parental rights is in
Kurt’s best interest.  Father challenges the trial court’s nonpaternity
findings and the factual sufficiency of the evidence.  Mother’s court-appointed
counsel has filed a motion to withdraw and an Anders brief in support
stating that after diligently reviewing the record, he believes that any appeal
by Mother would be frivolous.  See Anders v. California,
386 U.S. 738, 87 S. Ct. 1396 (1967).   Although given notice and an
opportunity to file a pro se brief, Mother did not do so.  We affirm in part
and reverse in part.

Background
Facts

Kurt
was born in November 2010.  DFPS received a report that he tested positive for
cocaine at birth.  DFPS took him into care upon discharge from the hospital.  Mother
admitted to the DFPS investigator that she had been using cocaine for over
twenty years,[3] since she was sixteen
years old, and had last used cocaine three days prior to Kurt’s birth.  She
admitted that she had been using crack cocaine on a weekly basis throughout her
pregnancy.  She told the DFPS investigator that she had five other children,
none of which were in her care.  Mother had been prostituting herself at the
time of Kurt’s conception but she identified Father as Kurt’s father.[4] 
Mother and Father met on a street corner where Father would hang out.  Mother had
no identifying information for Father besides his name.

DFPS
investigator Marilin Jakubowske found Father in the Coffield Unit of the Texas
Department of Criminal Justice, where he was incarcerated for felonious theft
of a motor vehicle.  Jakubowske recalled only one instance of communication
with Father.  After she closed her investigation, she also received a letter
from him in which he acknowledged that he believed he was Kurt’s father. 
Oneeka Chilton, a DFPS worker, sent Father a family service plan and Father
responded.  Father did not tell Chilton about his ability or inability to
perform the services in jail, but he did ask about Kurt’s well-being.

Chilton
spoke to Mother in December 2010.  Mother told Chilton that she had a pending
criminal case for theft in Kansas in which she was awaiting sentencing.  She
told Chilton that she wanted to enter an inpatient drug treatment program when
she returned from Kansas.  After Mother got probation in Kansas in January
2011, Chilton gave Mother a service plan.  Mother got “very upset about . . .
some of the things in the family service plan,” stating that “she does care for
her child, she doesn’t lack empathy, and things of that nature.”  After talking
to her attorney, Mother agreed to the plan.

Based
on her drug assessment, Mother was recommended to complete intensive outpatient
treatment.  Mother did not complete the treatment however, and in March 2011,
told Chilton that she had been drinking and using drugs.  In April 2011, Mother
was arrested for violating her probation in Kansas.  She was sent to an
inpatient drug treatment program, which she completed in July 2011, and she returned
to Texas.[5]

DFPS
moved for termination as to both parents.  After a trial to the bench, the
trial court found that Mother had knowingly placed or knowingly allowed Kurt to
remain in conditions or surroundings which endangered his well-being; had engaged
in conduct or knowingly placed Kurt with persons who engaged in conduct which
endangered his well-being; and had constructively abandoned Kurt.  The trial
court also found that Father had knowingly placed or knowingly allowed Kurt to
remain in conditions or surroundings which endangered his well-being and had engaged
in conduct or knowingly placed Kurt with persons who engaged in conduct which
endangered his well-being.  The trial court found that termination of both
Mother’s and Father’s rights was in Kurt’s best interest.  The trial court also
found that Father did not file an admission of paternity or register with the
paternity registry.  The trial court terminated Mother’s and Father’s parental
rights to Kurt.  Mother and Father appealed.

Standard
of Review

A
parent’s rights to “the companionship, care, custody, and management” of his or
her children are constitutional interests “far more precious than any property
right.”  Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397
(1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  In a termination
case, the State seeks not just to limit parental rights but to erase them
permanently—to divest the parent and child of all legal rights, privileges,
duties, and powers normally existing between them, except for the child’s right
to inherit.  Tex. Fam. Code Ann. § 161.206(b) (West 2008); Holick v.
Smith, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination
proceedings and strictly construe involuntary termination statutes in favor of
the parent.  Holick, 685 S.W.2d at 20–21; In re R.R., 294 S.W.3d
213, 233 (Tex. App.—Fort Worth 2009, no pet.).

In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish one ground listed
under subsection (1) of the statute and must also prove that termination is in
the best interest of the child.  Tex. Fam. Code Ann. § 161.001 (West Supp.
2011); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be
established; termination may not be based solely on the best interest of the
child as determined by the trier of fact.  Tex. Dep’t of Human Servs. v.
Boyd, 727 S.W.2d 531, 533 (Tex. 1987); In re D.T., 34 S.W.3d 625,
629 (Tex. App.—Fort Worth 2000, pet. denied).

Termination
decisions must be supported by clear and convincing evidence.  Tex. Fam. Code
Ann. § 161.001; see also § 161.206(a).  Evidence is clear and
convincing if it “will produce in the mind of the trier of fact a firm belief
or conviction as to the truth of the allegations sought to be established.”  Id.
§ 101.007 (West 2008).  Due process demands this heightened standard
because termination results in permanent, irrevocable changes for the parent
and child.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In
re J.A.J., 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for
termination and modification).

Father’s
Appeal

Paternity

In
his first three issues, Father challenges the trial court’s findings that he
did not file an admission of paternity or register with the paternity registry. 
Father also argues that these findings are immaterial because paternity was
tried by consent.

Under
the family code, the rights of an alleged father may be terminated if

(1) after being
served with citation, he does not respond by timely filing an admission of
paternity or a counterclaim for paternity under Chapter 160; [or]

 

. . . . 

 

(3) the child is
under one year of age at the time the petition for termination of the
parent-child relationship or for adoption is filed and he has not registered
with the paternity registry under Chapter 160.

 

Tex.
Fam. Code Ann. § 161.002 (West 2008).  This court has held that there are no
formalities that must be observed for an admission of paternity to be effective. 
In re V.S.R.K., No. 02-08-00047-CV, 2009 WL 736751, at *4 (Tex.
App.—Fort Worth Mar. 19, 2009, no pet.); In re K.W., 138 S.W.3d 420
(Tex. App.—Fort Worth 2004, pet. denied).  Termination statutes must be
strictly construed in favor of the parent.  See In re E.M.N., 221
S.W.3d 815, 820 (Tex. App.—Fort Worth 2007, no pet.).

Both
Father and the State cite to K.W.  In K.W., the father did not
file a counterclaim for paternity or for voluntary paternity under chapter
160.  138 S.W.3d at 429.  The father did write a number of letters to the State
and to the trial court in which he acknowledged that he was the biological father
of K.W.  Id.  In that case, we held that the father’s letters
“constitute[d] admissions of paternity sufficient to put [the State] and the
trial court on notice that [the father] admitted his paternity and wanted to
oppose termination of any rights he might have with respect to K.W.”  Id.
at 430.  Similarly, in V.S.R.K., we held that the father, even though he
repeatedly questioned his paternity throughout the case, admitted his paternity
for purposes of section 161.002 by filing a general denial, filling out a request
for appointed counsel in which he stated that he was the parent of the child,
and requesting paternity testing.  2009 WL 736751, at *4–5.

In
this case, Father did not file a counterclaim for paternity or for voluntary
paternity under chapter 160.  He did file a request for counsel, signing on a
line above the words “Respondent Parent,” but did not circle whether he was a
parent or an alleged parent on a separate portion of the form.  Chilton
testified at trial that Father responded to a letter she wrote “acknowledging
the fact that he believed that this was his child.”  Father completely
cooperated when asked to take a paternity test, the results of which were
offered by DFPS and admitted without objection by Father.  Based on these
actions, we hold that Father admitted paternity for the purposes of section
161.002(b)(1).  See V.S.R.K., 2009 WL 736751, at *4–5; K.W., 138
S.W.3d at 430; see also Toliver v. Tex. Dep’t of Family & Protective
Servs., 217 S.W.3d 85, 105 (Tex. App.—Houston [1st Dist.] 2006, no pet.)
(holding that although father did not file a document with the court, he
“timely file[d] an admission of paternity” by appearing at trial, asserting
that he was the child’s father, and requesting that his rights not be
terminated).  Because Father has claimed paternity, he “stave[d] off summary
termination of his rights and require[d] the Department to meet the high burden
of proof found in section 161.001.”  Phillips v. Tex. Dep’t of Protective
& Regulatory Servs., 25 S.W.3d 348, 357 (Tex. App.—Austin 2000, no
pet.) (noting that subsection (a) of section 161.002 gives a father who has
admitted paternity “the right to proceed to trial and require the state to
prove by clear and convincing evidence that he engaged in one of the types of
conduct listed in section 161.001(1) and that termination is in the best
interest of his child”); see also Tex. Fam. Code Ann.
§ 161.002(a).  Further, because DFPS introduced evidence relevant to
Father’s paternity (such as his paternity test results which established
Father’s paternity of Kurt) without objection, the issue of paternity was tried
by consent.  See Boyles v. Kerr, 855 S.W.2d 593, 601 (Tex.
1993) (op. on reh’g).  We sustain Father’s first and second issue.  Having
sustained Father’s first two issues, we do not need to address his third
issue.  See Tex. R. App. P. 47.1.

Grounds
for termination

In
Father’s fourth and fifth issues, he argues that the evidence is legally and
factually insufficient to support the trial court’s findings that he knowingly
placed or knowingly allowed Kurt to remain in conditions or surroundings which
endangered his well-being and engaged in conduct or knowingly placed Kurt with
persons who engaged in conduct which endangered his well-being.

In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in
the light most favorable to the finding and judgment.  Id.  We resolve any
disputed facts in favor of the finding if a reasonable factfinder could have
done so.  Id.  We disregard all evidence that a reasonable factfinder
could have disbelieved.  Id.  We consider undisputed evidence even if it
is contrary to the finding.  Id.  That is, we consider evidence
favorable to termination if a reasonable factfinder could, and we disregard
contrary evidence unless a reasonable factfinder could not.  Id.

We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573, 574.  And even when credibility issues appear in the appellate record, we
defer to the factfinder’s determinations as long as they are not
unreasonable.  Id. at 573.  If we determine that no reasonable
factfinder could form a firm belief or conviction that the grounds for
termination were proven, then the evidence is legally insufficient, and we must
generally render judgment for the parent.  J.F.C., 96 S.W.3d at 266; see
Tex. R. App. P. 43.3.

In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the judgment with our
own.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We determine
whether, on the entire record, a factfinder could reasonably form a firm
conviction or belief that the parent violated subsections (D) or (E) of
section 161.001(1).  Tex. Fam. Code Ann. § 161.001; In re C.H., 89
S.W.3d 17, 28 (Tex. 2002).  If, in light of the entire record, the disputed
evidence that a reasonable factfinder could not have credited in favor of the
finding is so significant that a factfinder could not reasonably have formed a
firm belief or conviction in the truth of its finding, then the evidence is
factually insufficient.  H.R.M., 209 S.W.3d at 108.

“Endanger” means to expose to loss or injury, to jeopardize.
 Boyd, 727 S.W.2d at 533; In re J.T.G., 121 S.W.3d 117, 125
(Tex. App.—Fort Worth 2003, no pet.).   Under section 161.001(1)(D), it is
necessary to examine evidence related to the environment of the children to
determine if the environment was the source of endangerment to the children’s
physical or emotional well-being.   J.T.G., 121 S.W.3d at 125.   Conduct
of a parent in the home can create an environment that endangers
the physical and emotional well-being of a child.   In re W.S., 899
S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ).   For example,
abusive or violent conduct by a parent or other resident of a child’s home may
produce an environment that endangers the physical or
emotional well-being of a child.   See id. at 776–77; Ziegler v.
Tarrant Cnty. Child Welfare Unit, 680 S.W.2d 674, 678 (Tex. App.—Fort Worth
1984, writ ref’d n.r.e.).  Parental and caregiver illegal drug use and
drug-related criminal activity likewise supports the conclusion that the
children’s surroundings endanger their physical or emotional
well-being.   See In re S.D., 980 S.W.2d 758, 763 (Tex. App.—San
Antonio 1998, pet. denied).

Courts
have repeatedly held that evidence of conduct prior to a father’s knowledge of
paternity is not properly considered under subsection (D).  See In re
M.D.S., 1 S.W.3d 190, 198 (Tex. App.—Amarillo 1999, no pet.); Djeto v.
Tex. Dep’t of Protective & Regulatory Servs., 928 S.W.2d 96, 98 (Tex.
App.—San Antonio 1996, no writ).  Father did not become aware of Kurt until
after Kurt’s birth in late 2010 while Father was incarcerated.[6] 
By the time Father was aware of Kurt’s existence, Kurt had already been removed
by DFPS and placed in foster care.  Therefore we cannot say that there is
sufficient evidence that Father knowingly placed or knowingly allowed Kurt to
remain in endangering conditions.

However,
Father’s conduct prior to his knowledge of paternity may be considered under
subsection (E).  See M.D.S., 1 S.W.3d at 198.  Under (E), the relevant
inquiry is whether evidence exists that the endangerment of the child’s
physical well-being was the direct result of the parent’s conduct, including
acts, omissions, or failures to act.   See J.T.G., 121 S.W.3d at
125; see also Tex. Fam. Code Ann. § 161.001(1)(E).   Additionally, termination under (E) must be based on more than a single act or
omission; the statute requires a voluntary, deliberate, and conscious course of
conduct by the parent.   J.T.G., 121 S.W.3d at 125; see Tex.
Fam. Code Ann. § 161.001(1)(E).   It is not necessary, however, that
the parent’s conduct be directed at the child or that the child actually suffer
injury.   Boyd, 727 S.W.2d at 533; J.T.G., 121 S.W.3d at
125.   The specific danger to the child’s well-being may be inferred from
parental misconduct standing alone.   Boyd, 727 S.W.2d at 533; In
re R.W., 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

As
evidence of Father’s endangering course of conduct, the State points to
Father’s long criminal history, especially his conviction for sexual assault,
and Father’s knowledge that Mother was engaging in prostitution.  The State
argues that Father could be terminated under subsection (E) because he “should
have known any potential off-spring of [Mother and Father’s] sexual conjugation
would be raised by Mother in an environment of illegal narcotics and household
income earned through” prostitution.  While Father admitted to knowing that
Mother was engaging in prostitution at the time of Kurt’s conception, there was
no evidence that Father was aware that Mother was a present danger to their
future child.  See In re D.J., 100 S.W.3d 658, 668–70 (Tex. App.—Dallas
2003, no pet.) (holding that mother’s knowledge that father had a criminal
history of selling drugs and a recent history of doing drugs alone did not constitute
clear and convincing evidence that leaving her child with father was
endangering to the child).  The State’s argument assumes that subsection (E)’s
language that prohibits “knowingly plac[ing]” a child with endangering people
includes engaging in sexual intercourse with the knowledge that the sexual
partner would be an unfit parent should the union result in pregnancy.  To
construe subsection (E) as the State would have us do would impose upon every
man who engages in sexual conduct, protected and unprotected, with a woman, the
duty to determine prior to the act that she would not engage in conduct in the
future that could endanger any child they conceived.  We do not read anything
in subsection (E)’s language that indicates that knowingly placing a child with
endangering people encompasses children who are not yet born or even
contemplated.  Thus, there is insufficient evidence to support a finding that
Father knowingly placed Kurt with persons who engaged in endangering conduct.

Turning
to whether Father himself engaged in conduct that endangered Kurt, we first
note Father’s extensive criminal history.  Father was convicted of attempted
possession of cocaine in 1995, delivery of cocaine in 1996, 1997, and 1998, and
possession of cocaine in 2001.  Father has a conviction for evading arrest from
2003, theft of a vehicle from 2005, and failure to comply with sexual offender
registration requirements and for delivery of cocaine in 2006.  In 2010, Father
was convicted for theft of a vehicle.

Father
initially received deferred adjudication probation for the sexual assault
offense but he was convicted of sexual assault of a child in 1990 when his
probation was revoked.  The offense occurred in 1985, when Father “had just
turned” seventeen and his victim was fifteen “and a half.”  Father testified
that he and the victim were boyfriend and girlfriend, but that her parents
“didn’t agree with it.”  Since statutory changes in 1997, Father has had to
register as a sex offender.

During
his last incarceration, Father was disciplined a number of times.  In July
2011, Father threatened an officer in the dining hall.  He was also caught
possessing tattooing paraphernalia in July 2011.  In August 2011, Father was
found to have committed two offenses in jail by publically masturbating. 
Father only admitted to committing one offense.  The disciplinary report for
the other offense states that Father believed the officer wrote up the wrong
cell number.  On the offense report, the officer herself identified the
offender by a different name.

While
evidence of criminal conduct, convictions, and imprisonment prior to the birth
of a child will support a finding that a parent engaged in a course of conduct
that endangered a child’s well-being, J.T.G., 121
S.W.3d at 133, there is little evidence in this case that Father has continued
this course of conduct since learning of the birth of his child.[7] 
And while Father’s criminal past is lengthy and has resulted in numerous
periods of incarceration, imprisonment alone does not constitute a continuing
course of conduct that endangers the physical or emotional well-being
of a child.   Boyd, 727 S.W.2d at 533–34; In re M.R., 243
S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.).   Imprisonment is
only a factor to be considered. Boyd, 727 S.W.2d at 533–34; see In
re E.S.S., 131 S.W.3d 632, 639 (Tex. App.—Fort Worth 2004, no pet.)
(holding that father’s life sentence for murder, without more, was insufficient
to support termination under subsection (E)).  “Further, the commission of any
intentional act which results in imprisonment, including violation of
probation, is not sufficient grounds, standing alone, for termination.”  In
re T.H., 131 S.W.3d 598, 604 (Tex. App.—Texarkana 2004, pet. denied).

Father’s
sexual assault occurred when Father was a juvenile, and there is no evidence
that he has engaged in any other violent sexual conduct or domestic violence in
the twenty-six years since that crime.  Father testified that he has not used
drugs since 1989, but he did admit that he had sold drugs.  While the trial
court could have chosen to disbelieve this testimony, under a factual
sufficiency review we must consider the entire record, and the State did not
present any evidence to contradict Father’s statements.  In re A.S., 261
S.W.3d 76, 87 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (holding that
mother’s uncontroverted testimony that she used marijuana once during her
pregnancy did not rise to a conscious course of conduct).  Further, Father’s
last conviction for delivery of cocaine was in 2006, and the State offered no
evidence or argument that Father had sold illegal drugs in the five years
between that conviction and this trial.

At
trial, Father testified that as soon as he was notified that he might have a
son, he immediately agreed to a paternity test.[8]  DFPS investigator
Jakubowske testified that she believed Father was trying to cooperate with DFPS
for the return of his child.  Chilton testified that she looked on the website
for Father’s prison unit and saw that it provides substances abuse education, parent
training, life skills training, and counseling that Father could attend.  Father
testified that as soon as he got his service plan, he signed up on the waiting
list for parenting classes.  He said that because of budget cuts, parenting
classes had been cut back, and he was told that he would probably be out of
prison by the time his name came up on the list.  Father was also on the
waiting list for drug and alcohol classes.  He also testified that his unit did
not offer life skills classes, but it did offer “changes in cognitive
intervention,” a 180-hour class that Father completed in April 2011, six months
before trial.  The cognitive intervention class includes some life skills and relapse
prevention instruction.  Father described the program as “one of the best
programs they have in TDC, because it deals with your thinking.”  Chilton
testified that such a program “would help” Father meet his goals.  Chilton
testified that she believed that Father would also need parenting classes and
substance abuse education.  Chilton testified that she did not believe that
Father has demonstrated that he can meet Kurt’s emotional and physical needs,
that he can protect Kurt from danger, or that he can provide a safe and stable
home environment for Kurt.

Father
testified that he has applied to “six or seven” truck driving schools to train
as a truck driver.  He did not think that his sexual assault conviction would
prevent him from getting a job as a driver because he knew others with sexual
assault convictions who drove trucks.  He plans on living with his sister in
Arlington.  He said, “[W]hen I was out there on my own, I didn’t have no
responsibility.  Now I have responsibility.  You know, I don't mind doing
whatever they want me to do, parenting class, whatever class they want me to
do.”  He acknowledged that his long criminal history “is bad,” but he believed
that he could be a good father.  Father asked that managing conservatorship be
granted to his brother.

Chilton
testified that DFPS hoped to place Kurt with Father’s brother, who had
expressed willingness to care for Kurt.  Father’s brother was scheduled for a
home study the day after trial.  Chilton testified that she believed that, if
approved, Father’s brother could be a good placement for Kurt.  If Father’s
brother was not a suitable arrangement, DFPS planned on placing Kurt for
adoption.

Although
Father did not complete his service plan, the record indicates that he made
efforts to comply by signing up for the limited classes available to him in
prison.  See In re J.A.J., 225 S.W.3d 621, 627 (Tex. App.—Houston [14th
Dist.] 2006), aff’d in part, rev’d in part on other grounds, 243 S.W.3d
611 (Tex. 2007) (holding that mother’s failure to complete her service plan was
insufficient to support termination under subsection (D) when the evidence was
that she attempted to improve her situation despite her poverty and lack of
transportation).  While Father has repeatedly and decidedly exercised poor
judgment in his life, there is little evidence that he consciously continued
such behavior since the birth of his only child.  See Williams v. Tex. Dep’t
of Human Servs., 788 S.W.2d 922, 927 (Tex. App.—Houston [1st Dist.] 1990,
no writ) (holding that mother’s poor treatment of her child in the two months
in which she had custody of him was insufficient to support a finding under
subsection (D) or (E) when three years had passed and she had not engaged in
any endangering conduct since), overruled on other grounds by In re J.N.R.,
982 S.W.2d 137 (Tex. App.—Houston [1st Dist.] 1998, no pet.).  Further, this
case is distinguishable from cases relied upon by the State because when Father
engaged in his criminal conduct amassed in his criminal record, he had no
children that he was disregarding.  See T.H., 131 S.W.3d at 604
(holding that the evidence was insufficient to support termination under
subsection (E) even when father was incarcerated before the child was a year old
and two years later was incarcerated for four years for burglary).

Father
has been continually incarcerated since before Kurt’s birth and had no
knowledge that the child had been conceived or born prior to the letter sent by
DFPS.  Since receiving that information, Father cooperated with DFPS to the
best of his ability.  He signed up for all the classes available and completed
the one in which he was able to enroll.  He has searched for employment and
made plans for improving his life upon his release.  Father’s request was
simply that he be given a real opportunity when released from incarceration to
do what was required to demonstrate his willingness and ability to be a good
parent.[9]

Reviewing
all the evidence in the light most favorable to the finding, we hold that no
reasonable factfinder could form a firm belief or conviction that Father
engaged in behavior endangering to Kurt.  Neither could a reasonable factfinder,
in reviewing the entire record, form a firm conviction or belief that Father violated
subsection (D) or (E).  The evidence thus is legally and factually insufficient
to support termination under both subsections (D) and (E) of section
161.001(1).  We sustain Father’s fourth and fifth issues.

Mother’s
Appeal

Mother’s
court-appointed appellate counsel has filed a motion to withdraw as counsel and
a brief in support of that motion.  In the motion, counsel avers that he has
conducted a professional evaluation of the record and, after a thorough review
of the applicable law, has reached the conclusion that there are no arguable
grounds to be advanced to support an appeal of this cause and that the appeal
is frivolous.

Counsel’s
brief and motion meet the requirements of Anders by presenting a
professional evaluation of the record demonstrating why there are no reversible
grounds on appeal and referencing any grounds that might arguably support the
appeal.  See Anders, 386 U.S. at 741, 87 S. Ct. at 1398; Mays v.
State, 904 S.W.2d 920, 922–23 (Tex. App.—Fort Worth 1995, no pet.).  This
court has previously held that Anders procedures apply in parental
rights termination cases when the Department has moved for termination.  In
re K.M., 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, no pet.).   Mother
was given the opportunity to file a pro se brief on her own behalf, but she did
not do so.   The Department replied to Mother’s counsel’s Anders
brief, agreeing that its independent review of the record revealed no colorable
claims of error that would support reversing the trial court’s judgment.

In
our duties as a reviewing court, we must conduct an independent evaluation of
the record to determine whether counsel is correct in determining that the
appeal is frivolous.   See Stafford v. State, 813 S.W.2d 503, 511
(Tex. Crim. App. 1991); Mays, 904 S.W.2d at 923.   Only then may we
grant counsel’s motion to withdraw.
  See Penson v. Ohio, 488 U.S. 75, 82–83, 109 S. Ct. 346, 351
(1988).   We have carefully reviewed the appellate record and Mother’s
appellate counsel’s brief.   We agree with her appellate counsel that the
appeal is wholly frivolous and without merit.   We find nothing in the
record that might arguably support the appeal.   See In re J.T.,
No. 02-10-00284, 2011 WL 856927, at *1 (Tex. App.—Fort Worth, Mar. 10, 2011, no
pet.) (citing Bledsoe v. State, 178 S.W.3d 824, 827 (Tex. Crim. App.
2005)).  Therefore, we grant Mother’s appellate counsel’s motion
to withdraw and affirm the trial court’s
judgment terminating Mother’s parental rights to her child.

Conclusion

Having
granted the motion to withdraw by Mother’s counsel, we affirm that part of the trial
court’s judgment terminating Mother’s parental rights to Kurt.  Having sustained
Father’s first, second, fourth, and fifth issues, we reverse that part of the
trial court’s judgment terminating Father’s parental rights to Kurt and render
judgment denying the State’s petition to terminate Father’s parental rights to
Kurt.  See Tex. R. App. P. 43.3; J.F.C., 96 S.W.3d at 266
(stating that if we determine that the evidence is legally insufficient, we
must generally render judgment for the parent).  Because we reversed the
termination of Father’s parental rights, we also reverse the trial court’s
appointment of DFPS as the child’s permanent sole managing conservator.  See
In re D.N.C., 252 S.W.3d 317, 319 (Tex. 2008); In re M.G.P., No.
02-11-00038-CV, 2011 WL 6415168, at *14 (Tex. App.—Fort Worth Dec. 22, 2011,
pet. filed) (reversing the trial court’s appointment of DFPS as the permanent
managing conservator when it was appointed as a consequence of termination).  We
remand the case to the trial court for the limited purpose of appointing a
permanent managing conservator.  M.G.P., 2011 WL 6415168, at *14.

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
WALKER,
MCCOY, and GABRIEL, JJ.

 

DELIVERED:  September 20,
2012








 



 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00420-CV


 
 
 In
 the Interest of K.E.S., a Child
  
  
  
  
  
  
 
 
 §
  
 §
  
 §
  
 §
  
 
 
 From the 323rd District
 Court
  
 of
 Tarrant County (323-93695J-10)
  
 September
 20, 2012
  
 Opinion
 by Justice Gabriel
 
 


JUDGMENT ON REHEARING

 

          After
reviewing the Department of Family and Protective Services’ (DFPS) motion for
rehearing, we deny the motion.  We withdraw our July 12, 2012 opinion and
judgment and substitute the following:

This
court has again considered the record on appeal in this case and holds that there
was error in part of the trial court’s judgment.  It is ordered that the
judgment of the trial court is affirmed in part and reversed and remanded in
part.  We affirm that portion of the trial court’s judgment that terminates
Mother’s parental rights to the child and grant the motion to withdraw by
Mother’s counsel.  We reverse that portion of the trial court’s judgment that terminates
Father’s parental rights to the child and also reverse the trial court’s
appointment of DFPS as the child’s permanent sole managing conservator and
remand this case for further proceedings consistent with this opinion.

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

    Justice Lee Gabriel

 

 









[1]See Tex. R. App. P. 47.4.





[2]We use an alias for the
child throughout this opinion.  See Tex. R. App. P. 9.8(b)(2).





[3]Mother has two convictions
for possession of cocaine from 2001 and two convictions for delivery of cocaine
from 2002 and 2003.





[4]Mother has three
convictions for prostitution, one in 2006, one in 2009, and one in 2010.





[5]Chilton testified that
Mother attended visitation with Kurt before she went to Kansas but made no
contact with Kurt after her return.





[6]The paternity test was not
completed until April 2011.





[7]We are mindful that some
of the misconduct allegations were alleged to have occurred after Father became
aware that he was Kurt’s father.





[8]Kurt is Father’s only
biological child.





[9]Father’s projected release
date at trial was June 19, 2012.